**NORTHROP CORPORATION,**
Plaintiff–Appellant,

v.

**AIL SYSTEMS, INC., and Eaton Corporation, Defendants–Appellees.**

No. 91–1211.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 31, 1991.

Decided April 10, 1992.

Michael R. Blankshain, Robert E. Kehoe, Jr., Kristyn D. Elliott, Wildman, Harrold, Allen & Dixon, Chicago, Ill., Joseph F. Coyne, Jr., argued, Mary E. Tarduno, Stephen J. O'Neil, Sheppard Mullin, Richter & Hampton, Los Angeles, Cal., for plaintiff-appellant.

Jon K. Stromsta, Michael H. King, argued, Kurt H. Feuer, Keith P. Schoeneberger, Jerold R. Lavin, Andrew D. Crain, James M. Amrein, Ross & Hardies, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, COFFEY, Circuit Judge, and WISDOM, Senior Circuit Judge.*

COFFEY, Circuit Judge.

Northrop Corporation filed a complaint in the district court against AIL Systems, Inc. and its parent company Eaton Corporation (collectively referred to as "AIL") alleging that AIL had breached an agreement the two had concerning the development and production of a B–1B bomber for the United States Air Force. The complaint alleged breach of contract, promissory estoppel, breach of an implied covenant of good faith and fair dealing, and sought declaratory relief. The district court granted AIL's motion to dismiss the complaint for lack of jurisdiction, and refused to allow Northrop leave to amend its complaint. Northrop appeals both the dismissal of its complaint and the denial of its motion to amend. We affirm.

## I.

In 1980, Northrop and AIL, both Delaware corporations, entered into what is known in the defense industry as a "teaming agreement". Under their teaming agreement, Northrop and AIL agreed to work together to obtain a contract from the United States Air Force for the electronic countermeasures system ("ECM") for the B–1B bomber. The ECM is used to jam and confuse enemy defense systems, allowing the B–1B to avoid anti-aircraft missiles and other related defenses. The teaming agreement provided that if AIL were named the prime contractor for the development of the ECM, AIL would award a subcontract to Northrop for all work on the Bands 6, 7 and 8 transmitters ("the transmitters"), component parts of the ECM. The agreement also provided that if AIL obtained "follow-on development or production contracts" for the ECM, Northrop would be awarded the transmitter subcontract for that work as well.

The United States Air Force awarded prime contracts to AIL for development of the B–1B ECM. AIL, in turn, awarded Northrop numerous subcontracts for work on the transmitters. This work was fully completed. In the late 1980s, at the Air Force's direction, AIL began making certain changes to the B–1B ECM. AIL asked Northrop to submit a proposal for implementation of the changes affecting the transmitters. In May 1990, Northrop provided AIL with a quote of approximately $52 million to implement the changes to the transmitters. By letter dated July 23, 1990, AIL informed Northrop that it planned to perform the work on the transmitters itself rather than subcontract it to Northrop. AIL explained that "it would be more cost effective for both AIL and the Air Force if the work were to be performed by AIL."

Northrop responded by filing suit against AIL alleging that it breached the teaming agreement by not awarding Northrop the subcontract for the new transmitter work. Northrop's complaint alleged breach of contract, promissory estoppel, breach of an implied covenant of good faith

---

* The Honorable John Minor Wisdom, Senior Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

and fair dealing, and sought declaratory relief. Northrop asserted that, although its complaint described a contract dispute between non-diverse parties, it nevertheless arose under federal common law jurisdiction pursuant to 28 U.S.C. § 1331. The district court found that the federal interest in the dispute was insufficient to support federal common law jurisdiction and therefore granted AIL's Fed.R.Civ.P. 12(b)(1) motion to dismiss the action for lack of subject matter jurisdiction. After the dismissal, Northrop moved for permission to amend its complaint. The district court denied the motion, stating that it was convinced that Northrop could allege no facts that would bring it within the parameters of federal common law jurisdiction. Northrop then filed a Fed.R.Civ.P. 59(e) motion asking the court to vacate its dismissal, and tendered an amended complaint designed to meet the court's jurisdictional concerns. The district court reviewed the amended complaint, determined that it failed to cure the jurisdictional deficiencies of the original complaint, and denied the Rule 59(e) motion to vacate. We agree with the district court that Northrop's original and amended complaints are insufficient to invoke federal common law jurisdiction. We affirm.[1]

## II.

### A.

■ Title 28, U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Although "[t]here is, of course, 'no federal general common law,'" *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981) (quoting *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938)), "§ 1331 jurisdiction will support claims founded upon federal common law ...." *Illinois v. City of Milwaukee*, 406 U.S. 91,

101, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972). The source of this jurisdiction is the Supreme Court's recognition of,

> "the need and authority in some limited areas to formulate what has come to be known as federal common law.... These instances are few and restricted ... and fall into essentially two categories: those in which a federal rule of decision is necessary to protect uniquely federal interests ... and those in which Congress has given the courts the power to develop substantive law."

*Texas Industries*, 451 U.S. at 640, 101 S.Ct. at 2067 (citations omitted). *See also King v. Gibbs*, 876 F.2d 1275, 1282 (7th Cir.1989). Northrop has failed to cite any Congressional enactment granting the federal courts the power to create the substantive law governing its dispute with AIL. Thus, Northrop is left to contend that its complaint should be governed by federal common law because it implicates a uniquely federal interest.

The Supreme Court has stated that uniquely federal interests are present "where there is an overriding federal interest in the need for a uniform rule of decision or where the controversy touches basic interests of federalism...." *Illinois v. City of Milwaukee*, 406 U.S. at 105–06 n. 6, 92 S.Ct. at 1393 n. 6. This test is met

> "only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases."

*Texas Industries*, 451 U.S. at 641, 101 S.Ct. at 2067.

■ That a lawsuit involves a uniquely federal interest, however, does not by itself authorize federal courts to invoke federal common law jurisdiction. "That merely establishes a necessary, not a sufficient, condition for the displacement of state law." *Boyle v. United Technologies Corp.*, 487 U.S. 500, 507, 108 S.Ct. 2510, 2515, 101

---

1. The parties inform us that on March 8, 1991, the Air Force terminated the AIL work on the B–1B ECM that is the subject of this appeal. Because we find that there is no federal jurisdic-

tion to hear Northrop's complaint, we need not determine if the Air Force's action renders this suit moot.

L.Ed.2d 442 (1988). "Displacement will occur only where ... a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law' ... or the application of state law would 'frustrate specific objectives' of federal legislation...." *Id.* (citations omitted). *See also Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966) (In deciding whether to fashion rules of federal common law, "normally the guiding principle is [the existence of] a significant conflict between some federal policy or interest and the use of state law....")

Thus, we assert federal common law jurisdiction over Northrop's lawsuit against AIL only if (1) the dispute implicates a uniquely federal interest and (2) a significant conflict exists between an identifiable federal policy or interest and the application of state law to the dispute or the application of state law would frustrate specific objectives of federal legislation. *Texas Industries*, 451 U.S. at 640, 101 S.Ct. at 2067; *Boyle*, 487 U.S. at 507, 108 S.Ct. at 2515. Northrop's suit against AIL meets neither requirement, and therefore federal common law jurisdiction does not lie.

### B.

■ Northrop's complaint is barren of any question of unique federal interest and merely describes a contract dispute over the meaning and application of a teaming agreement between two private defense contractors. The teaming agreement makes Northrop a *potential* subcontractor on the B–1B ECM contract. Northrop's suit alleges that AIL owes Northrop damages for breaching this teaming agreement, and asks for a declaration from the court delineating the parties' rights and obligations under the agreement.

Northrop's central argument is that because the federal government has a strong interest in the efficient production of an effective B–1B ECM system, it has a similar interest in the teaming agreement between AIL and Northrop. The Supreme Court has recognized that "the procurement of equipment by the United States is an area of uniquely federal interest...." *Boyle*, 487 U.S. at 507, 108 S.Ct. at 2515. In *Boyle*, for example, the Court held that the imposition of civil liability on defense contractors arising from their government work involved a uniquely federal interest because it would "directly affect the terms of Government contracts: either the contractor will decline to manufacture the design specified by the Government, or it will raise its price. Either way, the interests of the United States will be directly affected." *Id.*

The procurement contract between the United States and AIL does involve a unique federal interest. This does not mean, however, that a contractual dispute between the prime contractor AIL and the *potential* subcontractor Northrop rises to level of what may be classified as of unique federal interest. Unlike in *Boyle*, where the suit against the government contractor threatened to directly affect the terms of government contracts, no direct connection exists between the Northrop/AIL teaming agreement dispute and the government's contract with AIL for the production of the ECM under the terms of the contract. The federal government is not liable for any damages AIL may owe Northrop for the alleged breaches of the teaming agreement. Nor is there any indication that the government will pay a higher price for the B–1B ECM if AIL is found liable to Northrop. Thus, the "litigation before us raises no question regarding the liability of the United States or the responsibilities of the United States" under any contract. *Miree v. DeKalb County, Georgia*, 433 U.S. 25, 28–29, 97 S.Ct. 2490, 2493, 53 L.Ed.2d 557 (1977). Moreover, there is no evidence that the government has an interest in the adjudication of Northrop's rights under the teaming agreement. As the district court stated in dismissing Northrop's complaint,

> "[i]f the federal government wants Northrop to do the ECM work on the B–1B bomber, it is capable of contracting directly [with Northrop] or requiring AIL to subcontract with Northrop. If the government feels that AIL is capable of

the ECM work, which apparently it does, then so be it."

Had there been a unique federal interest in Northrop performing some of the work on the ECM system, the Air Force was quite capable of contracting for Northrop's participation. It did not, and this indifference on the part of the Air Force to Northrop's participation in the ECM project persuades us that there is no federal interest present sufficient to justify the creation of federal common law to govern the teaming agreement between Northrop and AIL. Northrop's suit against AIL does not involve a uniquely federal interest because "the litigation is among private parties and no substantial rights or duties of the United States hinge on its outcome." *Miree*, 433 U.S. at 31, 97 S.Ct. at 2495.

Northrop's other arguments in support of federal jurisdiction are equally unpersuasive. Northrop maintains that the federal government's extensive statutory and administrative regulation of defense contracting justifies creating a federal common law of teaming agreements. This is just another attempt to bootstrap Northrop's contract into federal court by attempting to tie it to the admitted federal interest in the Air Force's contract with AIL. But as we set out above, the federal interest in the latter contract does not create a similar interest in the former.

We also reject Northrop's argument that the federal government's authorization and recognition of the use of teaming agreements in government contracting, *see* Federal Acquisitions Regulations System, 48 C.F.R. §§ 9.601–604, is evidence of a unique federal interest in teaming agreements sufficient to support federal common law jurisdiction. Our reading of that regulation is that it does not confer jurisdiction on the federal courts to hear disputes arising from teaming agreements. Simply because teaming agreements are *permitted* by federal law does not automatically convert them into subjects of unique federal interest.

Northrop also maintains that its exclusion from the B–1B ECM work will lower the quality and increase the costs of the system, thus impacting on the nation's security. As the district court stated, if this is the case, then that is something for the Air Force to concern itself with, not the federal courts. The Air Force apparently believed that awarding the ECM contract to AIL was the best way to proceed with its B–1B project. Were we to hold that the federal government has a unique interest in the adjudication of Northrop's rights under the teaming agreement, we would, in effect, be second-guessing the Air Force's judgment about the importance of having Northrop work on the B–1B ECM. This we will not do.

Further buttressing our conclusion that federal common law jurisdiction does not lie is Northrop's inability to point to any case in which a teaming agreement entered into in anticipation of a government contract formed the basis for an exercise of federal common law jurisdiction. Lacking any direct authority for its position, Northrop is forced to rely principally on *United States v. Taylor*, 333 F.2d 633, 635 (5th Cir.1964), *American Pipe & Steel Corporation v. Firestone Tire & Rubber Company*, 292 F.2d 640, 641 (9th Cir.1961), and *Grinnell Fire Protection Systems Company, Inc. v. Regents of the University of California*, 554 F.Supp. 495, 496 (N.D.Cal. 1982), all of which applied federal common law to the interpretation of *subcontracts* entered into pursuant to prime contracts with the federal government. Northrop asks us to extend the logic of these cases to its teaming agreement with AIL. We decline the invitation. Subcontracts are agreements to perform work on government projects; teaming agreements are arrangements which *may* give rise to such subcontracts. We refuse to express a view as to the desirability of applying federal common law to disputes involving government subcontracts. Nevertheless, we observe that subcontracts which govern actual work being performed on federal projects implicate federal interests much more directly than teaming agreements entered into in the hope that they will lead to government subcontract work.

## C.

Even assuming, *arguendo*, that Northrop were able to mount a convincing argument that its complaint implicates a uniquely federal interest, federal common law jurisdiction still would not lie unless applying state law to the interpretation of teaming agreements among defense contractors would conflict with a federal policy or interest, or frustrate a specific objective of federal legislation. *Boyle*, 487 U.S. at 507, 108 S.Ct. at 2515. Northrop asserts that there is a federal interest in developing a uniform law of teaming agreements to govern the relations among defense contractors and in expediting adjudication of their disputes. However, "[g]eneral assertions of the need for a uniform body of [federal] law," such as those made by Northrop,

> "are insufficient [to support federal common law jurisdiction], particularly when there is no indication that application of the laws of the various states would result in varying or inconsistent rights and duties for the federal government."

*American Invs–Co Countryside, Inc. v. Riverdale Bank*, 596 F.2d 211, 218 (7th Cir.1979). Northrop has not demonstrated that the application of state law to disputes such as the instant one would harm the government's interests. We see no reason to conclude that the United States' military contracting "would be burdened or subjected to uncertainty by variant state-law interpretations" of its prime contractors' obligations under teaming agreements. *Miree*, 433 U.S. at 30, 97 S.Ct. at 2494. Thus, we hold that state law is more than adequate to adjudicate Northrop's claims of an alleged contract breach, promissory estoppel, and breach of the implied covenant of good faith and fair dealing.

## III.

■ Northrop challenges the trial judge's refusal to accept its tendered amended complaint, a decision the judge made during the hearing held to consider Northrop's Rule 59(e) motion to vacate. This motion was made *after* the district court had entered the judgment dismissing the original action on December 4, 1991.

Fed.R.Civ.P. 15(a) does provide, in pertinent part, that a "party may amend [its] pleading once as a matter of course at any time before responsive pleading is served ...". However, "once a district court enters judgment upon a dismissal (as opposed to a mere dismissal of the complaint), the plaintiff may amend the complaint under Rule 15(a) ... solely with 'leave of court' after ... the judgment has been set aside or vacated." *Twohy v. First National Bank of Chicago*, 758 F.2d 1185, 1196 (7th Cir.1985). In addition, a district court's decision not to allow amendment after a judgment has been entered is reviewable only for abuse of discretion. *Amendola v. Bayer*, 907 F.2d 760, 764 (7th Cir.1990). Here, the district court reviewed the amended complaint during the Rule 59(e) hearing and decided that it did not cure the jurisdictional defects of the original complaint. We agree with the district court that neither the original nor the amended complaint, both of which are part of the record on appeal, state a cause of action within the court's jurisdiction. Thus, the district court properly refused to vacate its dismissal of Northrop's suit to allow Northrop to formally file an amended complaint.

## IV.

The district court's dismissal of Northrop's suit for lack of subject matter jurisdiction is AFFIRMED.