In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1987

TRANSIT EXPRESS, INCORPORATED,

Plaintiff-Appellant,

v.

JOEL P. ETTINGER, Regional Administrator
of the Federal Transit Administration for
Region V, U.S. Department of Transportation,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 3415--Charles P. Kocoras, Judge.

Argued September 26, 2000--Decided April 12, 2001

Before COFFEY, RIPPLE, and ROVNER, Circuit Judges.

COFFEY, Circuit Judge. On May 21, 1999, Transit
Express, Incorporated, filed a one-count
complaint in the United States District Court for
the Northern District of Illinois seeking
declaratory relief and review of an
administrative decision issued by the Federal
Transit Administration. The complaint asserted
that Transit Express had been improperly excluded
from receiving monies from a federal program
designed to provide transportation services to
the elderly and persons with disabilities. The
district court dismissed the complaint after
ruling that the court lacked subject matter
jurisdiction because there was no federal
question involved in the case. We affirm.

I.   BACKGROUND
A.   Statutory and Regulatory Background

The Federal Transit Authority is a grant-making
agency within the United States Department of
Transportation authorized under Chapter 53 of
Title 49 of the United States Code to award
monetary grants to states in order that they may
finance the planning, development, construction,
and improvement of mass transportation
facilities. 49 U.S.C. sec. 5310(f). The Wisconsin
Department of Transportation ("WisDOT"), and

therefore Wisconsin, is one of the participants in this program.

Under 49 U.S.C. sec. 5310, the "Elderly Persons and Persons with Disabilities Program," state agencies may apply directly to the Federal Transit Authority for funding so the agencies can meet the special transportation needs of the elderly and the disabled in their state. According to the FTA, the goal of the program is

> to improve mobility for the elderly and persons with disabilities throughout the country. Toward this goal, FTA provides financial assistance for transportation services planned, designed, and carried out to meet the special needs of the elderly and persons with disabilities in all areas--urbanized, small urban, and rural.

FTA Circular 9070.1E.

Furthermore, Section 5310 funds are disbursed to the states through a formula that is based upon the number of elderly persons and persons with disabilities residing in each state as determined in the last U.S. census. Id. at Chapter II, paragraph 3. Once in receipt of federal funds, a state agency, in this case WisDOT, has the option of using the funds to either: (1) purchase equipment, such as vans and buses; or (2) subsidize services that transport elderly persons and persons with disabilities. 49 U.S.C. sec. 5323(a).

1. FTA Circulars 4220.1D and 9070.1E

The United States Secretary of Transportation is entrusted with the responsibility of promulgating rules and regulations establishing the standards for participation in the Section 5310 program. 49 U.S.C. sec. 5310(f). There are two FTA Circulars that are relevant to the disposition of the claims in this case: (1) Circular 9070.1E (the "Section 5310 Program Circular"); and (2) Circular 4220.1D (the "Third Party Procurement Circular"). Circular 9070.1E sets forth requirements that FTA recipients (state agencies) must adhere to when providing sub-grants to qualifying entities, such as non-profit organizations, under the Section 5310 program. Chapter I of the Section 5310 Program Circular states that a state agency that receives funds, in this case WisDOT, has the principal authority and responsibility for administering the Section 5310 program. WisDOT is responsible for notifying eligible local entities of funding availability, developing project selection criteria, determining applicant eligibility, and selecting projects for funding. FTA Circular 9070.1E,

WisDOT implements the Section 5310 program by extending sub-grants to eligible, non-profit organizations serving the elderly and persons with disabilities needing transportation assistance that have made direct application to WisDOT for state assistance. The eligible non-profit organizations selected and approved by WisDOT, in turn, usually contract with private companies to provide the transportation services. However, it is undisputed that in 1997, WisDOT used all of its Section 5310 grant monies to purchase vans, rather than fund operating expenses for the non-profit organizations.

B.  Transit Express's Complaints

  1. Transit Express's State Administrative Complaint

  Transit Express is a Wisconsin based, transportation service company that is not eligible to apply for or receive sub-grants from WisDOT under the Section 5310 program because it is a for-profit enterprise. On February 9, 1997, Transit Express filed an administrative complaint with WisDOT complaining that it had been unlawfully excluded from participating as a service provider for non-profit organizations that had received Section 5310 program funds from WisDOT funds during the fiscal 1997 grant cycle for a host of reasons./2 In its administrative complaint to WisDOT, Transit Express specifically claimed that: (1) Goodwill had contracted with Elder Care Lines, Inc. ("Elder Care Lines") for transportation services under the Federal Section 5310 program despite the existence of several improper conflicts of interest;/3 (2) Goodwill, the Center for Independence, Curative Services, and the Jewish Center all required what Transit Express felt were excessive amounts of insurance coverage, which, in turn, barred Transit Express from participating in the 5310 Program; (3) the Section 5310 fund-recipients neglected to provide Transit Express with the selection criteria used to evaluate bids; and (4) the Center for Independence improperly selected Elder Care Lines to provide transportation services. On July 23, 1997, WisDOT denied the administrative complaint filed by Transit Express.


  2.  The Federal Administrative Complaint

  On September 10, 1997, Transit Express filed a petition for administrative review with the FTA challenging WisDOT's disposition of its state complaint. On November 13, 1998, Joel Ettinger, the Regional Administrator of Region V of the

FTA,/4 issued a decision denying the petition for administrative review, stating:

Before FTA gets to the merits of the allegations raised by Transit, a decision must be made as to whether FTA has jurisdiction over this dispute and, if so, on what legal authority should FTA make a decision. Transit has argued that FTA should review this issue because it is a matter of federal concern. Further, Transit believes that FTA Circular 4220.1D is applicable and that WisDOT has ". . . failed to either establish its own protest procedures or to follow them."

* * * *

WisDOT does not fund any contractual or purchase of service agreements as part of its Program even though these agreements would be eligible for federal assistance. The only funds that the recipients receive under the program are for the purchase of capital assets. FTA's procurement requirements would only apply to the contracts solicited to purchase vehicles. Transit is not complaining about the purchase of vehicles by the five not for profit entities but is instead complaining about the notification process associated with the private transportation provider coordination requirements under the Program. Therefore 4220.1D is not applicable to this matter.

Having made this original determination about the applicability of the 4220.1D to WisDOT's Program, FTA must turn to what are the implications of that decision. A review of the basis of the complaint tends to indicate that there are a number of substantive issues being raised by Transit such as the conflict of interest violations as well as the overly restrictive insurance requirements. WisDOT has pointed out in their brief that they should be the ones to interpret their own regulations. FTA agrees with WisDOT's position. FTA Circular 9070.1E clearly states that the principal authority and responsibility for administering the program resides with the designated state agency. To the extent that the arguments of Transit are directed at WisDot's interpretation of their own regulations, FTA will not intervene. . . . FTA believes that the reasonableness or unreasonableness of WisDOT's decision is not for FTA to decide. FTA is responsible for determining if WisDOT is following FTA's requirements . . . .

Therefore, based on the above, FTA refers this matter back to WisDOT to take whatever additional action it deems necessary in accordance with their administrative process. To the extent that

the administrative process has been exhausted, Transit should pursue the matter further in the appropriate manner as specified under state law.

No further action was taken by WisDOT.

3. Transit Express Files Suit in Federal Court

On May 21, 1999, Transit Express filed a complaint in federal court seeking to compel the FTA to review the administrative complaint previously filed with WisDOT. Transit Express specifically asked the trial judge to find that the FTA had a duty to assume jurisdiction over its petition for review of WisDOT's service contract practices under 49 U.S.C. sec. 5301 et seq. Transit Express's complaint did not allege that WisDOT or any of the non-profit organizations that received grants from WisDOT had improperly used the vehicles purchased with federal funds; instead, the lawsuit focused exclusively on the allegation that Transit Express was unlawfully excluded from receiving a service provider contract based on the alleged fact that sub-grantees of the Section 5310 program had conflicts of interest with Elder Care Lines.

Transit Express asserted that the trial court could properly exercise federal question jurisdiction over the complaint pursuant to 28 U.S.C. sec. 1331 because the action arose under the federal transit laws 49 U.S.C. sec. 5301 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. sec. 701, et seq. The defendant disputed that federal jurisdiction was proper and thus moved to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim. The district judge granted defendant's motion and dismissed the lawsuit with prejudice on March 16, 2000, due to the fact that federal subject matter jurisdiction was lacking because there was no federal question involved in the case.

II. DISCUSSION
A. Standard of Review

We review the district court's decision to dismiss an action under Rule 12(b)(1) of the Federal Rules of Civil Procedure de novo. Long v. Shorebank Development Corp., 182 F.3d 548, 554 (7th Cir. 1999). In considering a motion to dismiss for lack of subject matter jurisdiction, the district court must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor. Rueth v. EPA, 13 F.3d 227, 229 (7th Cir. 1993).

B.  Subject Matter Jurisdiction

   Fundamental to our law is the understanding that "[f]ederal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area School District, 475 U.S. 534, 541 (1986); see also Allen v. Wright, 468 U.S. 737, 750 (1984). Furthermore, 28 U.S.C. sec. 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Also, plaintiff-appellant Transit Express bears the burden of proving that jurisdiction is proper in this case. Kontos v. United States Dept. of Labor, 826 F.2d 573, 576 (7th Cir. 1987). Finally, we are cognizant of the Supreme Court's admonition that "federal question jurisdiction arises only when the complaint standing alone 'establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Minor v. Prudential Securities, Inc., 94 F.3d 1103, 1105 (7th Cir. 1996) (quoting Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983)).

   With these standards in mind, federal jurisdiction is appropriate in the present case if Transit Express can establish either: (1) that a federal statute has granted the court the power to create substantive law governing this dispute; or (2) that federal common law jurisdiction has been implicated due to a "uniquely federal interest" as to which "the application of state law would frustrate specific objectives of federal legislation." Northrop Corp. v. AIL Systems, Inc., 959 F.2d 1424, 1426-27 (7th Cir. 1992).


   1.  Lack of federal statute authorizing jurisdiction

   Initially, Transit Express argues that it has properly invoked federal question jurisdiction because the Federal Transit Authority has a duty under federal law to assure that grantees, such as WisDOT, are in compliance with the mandates of the Section 5310 program. Transit Express contends that 49 U.S.C. sec. 5310, as embodied in FTA Circular 4220.1D ("the Third Party Procurement Circular"), requires WisDOT to oversee how organizations that receive sub-grants from state agencies distribute the grant monies they received from WisDOT. Transit Express

specifically claims a federal court is authorized to compel the FTA to review what Transit Express views were violations of the "Competition" requirements contained in paragraph 8 of the Third Party Procurement Circular. Paragraph 8 of that Circular states:

a. Full and Open Competition. All procurement transactions will be conducted in a manner providing full and open competition. Some of the situations considered to be restrictive of competition include, but are not limited to:

(1) Unreasonable requirements placed on firms in order for them to qualify to do business;

(2) Unnecessary experience and excessive bonding requirements;
* * * *

(5) Organizational conflicts of interest. An organizational conflict of interest means that because of other activities, relationships, or contracts, a contractor is unable, or potentially unable, to render impartial assistance or advice to the grantee; a contractor's objectivity in performing the contract work is or might be otherwise impaired; or a contractor has an unfair competitive advantage.

Initially, Transit Express is correct in stating that Circular 4220.1D mandates WisDOT to comply with federal regulations whenever WisDOT distributes federal funds to subgrantees. However, contrary to Transit Express's arguments, the competition requirements embodied in FTA Circular 4220.1D do not apply when state agencies such as WisDOT choose to purchase capital assets with the funds. The Third Party Procurement Circular plainly states:

This circular applies to all FTA grantees and subgrantees that contract with outside sources under FTA assistance programs. If a grantee accepts operating assistance, the requirements of this circular apply to all transit-related third party purchase orders and contracts. These requirements do not apply to procurements undertaken in support of capital projects completely accomplished without FTA funds or to those operating and planning contracts awarded by grantees that do not receive FTA operating and planning assistance.

Under the plain language of the Third Party Procurement Circular, the competition requirements contained in Paragraph 8 of the Circular do not apply to operating service contracts that are not assisted with federal funds. As WisDOT used all of its federal funds

for capital expenditures, the competition requirements do not apply to the service contracts "awarded by grantees that [did] not receive FTA operating and planning assistance."

Furthermore, we have previously held that the mere existence of a federal regulatory framework does not convey federal jurisdiction over contractual disputes between private parties that are ancillary to the governmental interest. Northrop, 959 F.2d at 1424. In Northrop, the Air Force contracted with AIL Systems, Inc. ("AIL") to develop a bomber. Id. at 1425. AIL had previously contracted with another defense contractor, Northrop, and had agreed to subcontract part of the work it received under the Air Force contract to Northrop. AIL subsequently decided to retain all of the defense contract work for itself. Northrop, in turn, brought suit in federal court against AIL for breach of contract alleging that federal question jurisdiction existed as a result of the federal government's interest in the production of the airplanes. The district court dismissed the case for want of subject matter jurisdiction, and we affirmed. Id. at 1426. We specifically rejected Northrop's argument which claimed that because the federal government had a strong interest in the production of bombers, it had a similar interest in the contract between AIL and Northrop. Id. We also rejected Northrop's argument that the federal government's extensive statutory and administrative regulation of defense contractors resulted in a federal common law concern for the adjudication of contract disputes between military contractors and subcontractors. Id.

Transit Express's arguments mirror those rejected in Northrop. Initially, Transit Express argues that the Federal Transit Authority has a strong interest in monitoring the Section 5310 program requirements. However, just as in Northrop, the FTA's general interest in efficient transportation does not extend a concurrent interest in the contracts entered into between private companies that provide transportation services and those non-profit organizations that make use of such services. At base, Transit Express complains about the failure of a state agency to review complaints that sub-grantees failed to follow state issued regulations. Consequently, whatever legal remedy Transit Express might be entitled to would be in state court not federal court.

2. Use of federal funds is not a "unique federal interest"

Transit Express alternatively argues that subject matter jurisdiction exists because the federal government retains a continuing interest in the use of those vehicles that WisDOT purchased with federal funds. In support of this argument, Transit Express relies primarily on In re Joliet-Will County Community Action Agency, 847 F.2d 430 (7th Cir. 1988), a case where state and federal agencies disputed the ownership of a bankrupt entity's assets purchased with state and federal grant money. Transit Express cites Joliet-Will for the proposition that subgrant-funded assets (such as the vehicles purchased by WisDOT) are "assets of the federal government and of the state agencies to which the federal government made some of the grant initially, for redistribution (along with the state's own money) to operating organizations." Id. at 432. Transit Express reasons that if the vehicles acquired with Section 5310 subgrant assistance are "assets of the federal government" then the federal government has a continuing interest over the use of such vehicles and this interest provides for federal jurisdiction over disputes concerning such property.

The argument that federal jurisdiction exists over this case because federal funds were expended in the purchase of the vehicles fails because the subject matter of Transit Express's complaint is unrelated to the vehicles, but rather centers on the distribution of service operating contracts. For example, the complaint filed by Transit Express alleges that Transit Express was unlawfully excluded from receiving service provider contracts with non-profit organizations who received the benefit of Section 5310 assistance, such as Goodwill. In its complaint, Transit Express frames the core of its grievance in this manner:

Plaintiff [Transit Express] has been unlawfully excluded from operating contracts funded by Section 5310 Program subgrants made by Wis DOT to [subgrantees] by and because of the unlawful conduct described in this Complaint.

The fact that federal funds were used to purchase the vehicles in compliance with the Section 5310 program is completely irrelevant to the present action and may not be used as a basis for bringing this action in federal court. The nonprofit organizations that were the recipients of the vehicles from the state could either elect to operate the vehicles themselves or contract independently with a service provider, such as Transit Express or Elder Care Lines. As the trial court so aptly stated, "the federal funds lurking in the background of this case cannot serve as an independent basis for establishing jurisdiction."

We also agree with the judge's conclusion that:

If the government retained some legal interest in the vehicles, not only would federal courts have jurisdiction over every accident involving the vehicles, the government could also be held liable for any injuries caused by the negligent operation of the vehicle. This would result in an avalanche of unforeseen liability for the United States and Wisconsin; plainly an untenable result. We hold that the government does not retain any continued legal interest in the vehicles. Accordingly, Transit's complaint does not present a federal question, and we have no jurisdiction over the suit.

The district court's decision is

AFFIRMED./5


/1 State agencies also accept complaints about disputes concerning their decisions because the Federal Transit Authority will not accept such feedback. Fed. Reg. 21890-901 (April 26, 1994).

/2 In 1997, WisDOT awarded Section 5310 funds (in the form of vehicles) to the following non-profit agencies: Curative Rehabilitation Services, Inc. ("Curative Services"); Goodwill Industries of Southeastern Wisconsin ("Goodwill"); Jewish Community Center of Milwaukee, Inc. ("Jewish Center"); and the Milwaukee Center for Independence ("the Center for Independence").

/3 Transit Express asserted that Elder Care Lines' relationship with Goodwill was inappropriate for the following reasons: (1) a director of transportation was on the payroll of both Goodwill and Elder Care Lines; (2) that Elder Care Lines' president was married to a Goodwill vice-president; and (3) substantial direct financial links existed between Goodwill and Elder Care Lines.

/4 Region V includes Illinois, Indiana, Michigan, Minnesota, Ohio, and Wisconsin.

/5 Because we hold that district court properly found that it did not have subject matter jurisdiction over this lawsuit, we need not address the standing issue.