**L'GARDE, INC., Plaintiff,**

v.

**RAYTHEON SPACE AND AIRBORNE SYSTEMS, a business of Raytheon Company, Defendant.**

**No. CV 11–4592 RSWL (AGRx).**

United States District Court, C.D. California.

July 26, 2011.

Brian J. Donovan, Peter B. Jones, Jones & Donovon, Newport Beach, CA, for Plaintiff.

Aaron Belzer, Amanda B. Weiner, Seyfarth Shaw, Los Angeles, CA, Donald G. Featherstun, Seyfarth Shaw, San Francisco, CA, for Defendant.

### ORDER Re: Plaintiff's Motion to Remand [10]; Defendant's Motion to Dismiss [7]

RONALD S.W. LEW, Senior District Judge.

On July 19, 2011, Plaintiff L'Garde Inc.'s Motion to Remand [10] and Defendant Raytheon Space and Airborne Systems, a business of Raytheon Company's, Motion to Dismiss [7] came on for regular calendar before this Court. The Court having reviewed all papers submitted pertaining to these Motions and having considered all arguments presented to the Court, **NOW FINDS AND RULES AS FOLLOWS:**

The Court hereby **DENIES** both Plaintiff L'Garde, Inc.'s Motion to Remand and Defendant Raytheon Space and Airborne Systems' Motion to Dismiss.

### I. *Background*

Plaintiff L'Garde, Inc. (hereinafter, "Plaintiff") filed a Complaint on April 19, 2011 in Los Angeles Superior Court against Defendant Raytheon Space and Airborne Systems, a business of Raytheon Company (hereinafter, "Defendant"). Plaintiff alleged in its Complaint claims against Defendant for breach of contract and fraud.

Defendant states that it was served with the Summons and Complaint on April 29, 2011. (Def.'s Notice of Removal, ¶ 3.) On May 27, 2011, Defendant filed a Notice of Removal of this Civil Action on the basis of diversity and federal question jurisdiction [1].

### II. *Legal Standards*

#### 1. *Judicial Notice*

Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of adjudicative facts only. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). A court must take judicial notice if a party requests it and supplies the court with the requisite information. Fed. R.Evid. 201(d).

#### 2. *Remand*

In deciding whether to remand a case, this Court must determine whether the case was properly removed to this Court. The right to remove a case to federal court is governed by 28 U.S.C. § 1441, which in relevant part states that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant. . . ." 28 U.S.C. § 1441(a). District courts have diversity jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332.

The Court may remand a case to state court for lack of subject matter jurisdiction or defects in removal procedure. 28 U.S.C. § 1447(c). The defendant has the burden of proving that removal is proper and that all of the prerequisites are satisfied. If at any time before final judgment it appears that the district court lacks subject matter jurisdiction over a case that has been removed to federal court, the case must be remanded. 28 U.S.C. § 1447(c).

The Ninth Circuit strictly construes the removal statute against removal jurisdiction and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). Moreover, the burden of overcoming the "strong presumption" against removal is always on the defendant. *Id.*

### 3. Motion To Dismiss

■■ In a Rule 12(b)(6) motion to dismiss, the Court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party. *Klarfeld v. United States,* 944 F.2d 583, 585 (9th Cir.1991). A dismissal can be based on the lack of cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988). A party need not, however, state the legal basis for his claim, only the facts underlying it. *McCalden v. California Library Ass'n,* 955 F.2d 1214, 1223 (9th Cir.1990).

■ A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Klarfeld,* 944 F.2d at 585; *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). The court need not, however, accept conclusory allegations or unreasonable inferences as true. *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981).

Additionally, claims of fraud must satisfy not only Rule 12(b)(6), but also the heightened pleading standard of Rule 9(b). In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Fed. R.Civ.P. 9(b).

■ The heightened pleading standard of Rule 9(b) is designed "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken,* 6 F.3d 666, 671 (9th Cir.1993). In order to meet this standard, the plaintiff must allege the "who, what, where, when, and how" of the fraudulent conduct.

*Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir.2003). The complaint must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir.2004). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess,* 317 F.3d at 1106 (quoting *Decker v. GlenFed, Inc.,* 42 F.3d 1541, 1548 (9th Cir.1994)).

■ However, "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R.Civ.P. 9(b); *Walling v. Beverly Enters.,* 476 F.2d 393, 397 (9th Cir.1973). Nevertheless, states of mind must still be alleged. *Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir.1984). *See also Fecht v. Price Co.,* 70 F.3d 1078, 1082 n. 4 (9th Cir.1995) (stating "the plaintiffs need 'simply ... say [ ] that scienter existed' to satisfy the requirements of Rule 9(b)") (quoting *In re GlenFed, Inc. Sec. Lit.,* 42 F.3d 1541, 1547 (9th Cir.1994)).

### III. Analysis

#### 1. Judicial Notice

■ Defendant requests the Court take judicial notice of results of records searches from the California Secretary of State website including: (A) the search results for California corporations with "Raytheon" in their name, (B) the "Business Entity Detail" of Raytheon Company, and (C) the search results for California corporations with "Space and Airborne" in their name. As a preliminary matter, the Court **GRANTS** Defendant's Request for Judicial Notice.

■ In *Hansen Beverage Co. v. Innovation Ventures, LLC,* the District Court for the Southern District of California noted that just as public records and govern-

ment documents are generally considered "not to be subject to reasonable dispute," so too does this include "[p]ublic records and government documents available from reliable sources on the Internet." *Hansen Beverage Co. v. Innovation Ventures, LLC,* No. 08–CV–1166–IEG, 2009 WL 6597891, at *1 (S.D.Cal. Dec. 23, 2009) (citing *Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir.1999)). The court in *Hansen Beverage* noted that internet pages printed off the FDA website were similarly reliable to other traditional public documents. *Id.* at *2.

Here, similar to *Hansen Beverage,* Defendant seeks judicial notice of the results of a records search from a government website, one recognized by courts as a source of reliable documentation. *Id.* (citing *Paralyzed Veterans of Am. v. McPherson,* No. C 06–4670, 2008 WL 4183981, at *5, 2008 U.S. Dist. LEXIS 69542, at *5 (N.D.Cal. Sept. 8, 2008) ("Information on government agency websites has often been treated as properly subject to judicial notice.")).

The Court finds that the accuracy of the results of records searches from the Secretary of State for the State of California corporate search website can be determined by readily accessible resources whose accuracy cannot reasonably be questioned. Therefore, the Court hereby **GRANTS** the Defendant's request and takes judicial notice of the content referenced in Exhibits A–C attached to Defendant's Request for Judicial Notice [16]. Specifically, the Court takes judicial notice of Exhibit A: the results of a records search from the Secretary of State for the State of California corporate search website, located at http://kepler.sos.ca.gov, conducted on June 28, 2011, for information on record with the California Secretary of State for corporations containing "Raytheon" in their name; Exhibit B: the "Business Entity Detail" for Raytheon

Company, dated June 28, 2011, printed from the Secretary of State for the State of California corporate search website; and Exhibit C: the results of a records search from the Secretary of State for the State of California corporate search website, located at http://kepler.sos.ca.gov, conducted on June 28, 2011, for information on record with the California Secretary of State for corporations containing "Space and Airborne" in their name.

### 2. *Motion To Remand*

Plaintiff argues this Case should be remanded to state court because there is (1) a forum selection clause requiring Plaintiff's choice of venue, (2) Defendant has failed to prove diversity jurisdiction, and (3) Defendant has failed to prove there is federal question jurisdiction.

First, Plaintiff argues there is a mandatory forum selection clause in the Letter Subcontract requiring Plaintiff's choice of forum.

"Federal law governs the enforceability of forum selection clauses in cases removed on the basis of diversity jurisdiction." *See Manetti–Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 513 (9th Cir.1988). A forum selection clause is presumed valid and courts must enforce the clause absent a showing that such enforcement would be unjust and unreasonable. *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). However, a mandatory forum selection clause constituting a waiver of a defendant's right to removal will only be found where "venue is specified with mandatory language." *Docksider, Ltd. v. Sea Tech., Ltd.,* 875 F.2d 762, 764 (9th Cir. 1989).

The Court finds that the forum selection clause in this Case contains no limiting or exclusivity language; it does

not name a required court, judge, or jurisdiction where the case must be heard. Unlike the forum selection clause in *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, which at least required the case to be heard in a specific County, the forum selection clause contained in the Letter Subcontract here merely requires that a court of competent jurisdiction hear any dispute arising out of the Letter Subcontract.[1] 817 F.2d 75, 76 (9th Cir.1987). Therefore, the Court finds the forum selection clause in the Letter Subcontract is too general to qualify as a mandatory forum selection clause. *See Hunt Wesson Foods*, 817 F.2d 75. *Calisher & Assocs., Inc. v. RGCM, LLC*, 373 Fed.Appx. 697 (9th Cir.2010). Rather, the Court finds that the clause relied on by Plaintiff here is a permissive forum selection clause because it contains vague, non-exclusive language. *See N. Cal. Dist. Council of Laborers v. Pittsburg—Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir.1995). Moreover, the Court finds that the permissive forum selection clause does not amount to an express waiver by Defendant of it's right to removal. *See Ferrari, Alvarez, Olsen & Ottoboni v. Home Ins. Co.*, 940 F.2d 550, 554 (9th Cir.1991).

Accordingly, because the Court finds the Letter Subcontract contains a permissive forum selection clause and that Defendant has therefore not expressly waived it's right to removal, the Court further finds that it may hear this Case so long as it has proper subject matter jurisdiction. As such, the Court **DENIES** Plaintiff's Motion to Remand based on the forum selection clause.

Second, Plaintiff argues that this Court lacks diversity jurisdiction because there is no complete diversity of citizenship between the Parties.

To determine diversity of citizenship in the context of diversity jurisdiction, a corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its "principal place of business." 28 U.S.C. § 1332(c)(1). Recently, in *Hertz Corp. v. Friend*, the Supreme Court held that a corporation's principal place of business is solely determined by the state of its "nerve center." —— U.S. ——, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010). A corporation's nerve center is "where a corporation's officers direct, control, and coordinate the corporation's activities ... [a]nd in practice it should normally be the place where the corporation maintains its headquarters— provided that the headquarters is the actual center of direction, control, and coordination." *Id.* at 1192.

Plaintiff L'Garde, Inc. is incorporated in California, and has its headquarters in Tustin, California. Defendant Raytheon Space and Airborne Systems is an unincorporated business division of Raytheon Company. Raytheon Company is incorporated in Delaware. Ninth Circuit precedent holds that, unlike a legally incorporated subsidiary, an unincorporated division of a corporation does not possess the formal separateness required and is therefore not an independent entity for jurisdictional purposes. *See Breitman v. May Co. Calif.*, 37 F.3d 562, 564 (9th Cir. 1994) (noting that the distinction between an incorporated subsidiary and an unincorporated division is important for determining diversity jurisdiction). Finding *Breitman* particularly instructive, the Court finds here that Defendant's citizenship is based on Raytheon Company. Accordingly, as Raytheon Company is incorporated in Delaware, the Court finds that Defen-

---

1. The clause states, "Any controversy or claim ... aris[ing] out of or in connection with this Purchase Order ... may be resolved by submitting the claim to a court of competent jurisdiction." (Pl.['s] Mot. to Remand, Declaration of Brian Donovan, ¶ 2, Ex. 1, at 2.)

dant is also a citizen of Delaware for diversity jurisdiction purposes.

However, to fully resolve the jurisdictional issue, the Court must also determine in which state Defendant has its principal place of business. As such, the Court next determines, based on the Supreme Court's guidance as to the nerve center test, whether Defendant has adequately pled the location of its headquarters or its "actual center of direction, control, and coordination." *Hertz*, 130 S.Ct. at 1192.

California district courts have found that reliance on a single piece of evidence, such as a Secretary of State printout, is insufficient for a party to prove the location of its headquarters under the nerve center test. *See N. Cal. Power Agency v. AltaRock Energy, Inc.*, No. 11–1749, 2011 WL 2415748, at *2–3 (N.D.Cal. June 15, 2011) (finding a Secretary of State printout insufficient as sole piece of evidence to prove a party's nerve center); *Ganesan v. GMAC Mortg., Inc.*, No. C 11–0046, 2011 WL 1496099, at *2 (N.D.Cal. Apr. 20, 2011) (finding conclusory statements of location of headquarters insufficient absent other evidence under nerve center test). However, here Defendant pleads a variety of facts which persuade the Court to find, based on the totality of the circumstances, that the headquarters of Raytheon Company are located in Waltham, Massachusetts. *See Hertz*, 130 S.Ct. at 1195 (finding "the mere filing of a form ... listing a corporation's 'principal executive offices' would, without more," be insufficient proof to establish a corporation's "nerve center").

Specifically, Defendant identifies 870 Winter Street, Waltham, Massachusetts 02451 as the location of its headquarters and pleads that: five of its twelve executive officers, including its CEO, work out of the Waltham office; nationwide operations and control as to its Human Resources, Information Technology, and Finance Departments originate from there; its Board of Directors meet there; and the California Secretary of State and Defendant's Form 10–K recognize Raytheon Company's headquarters as Waltham, Massachusetts. (Opp'n to Pl.['s] Mot. to Remand, Declaration of Woods Abbot, ¶¶ 5–8.) (Req. for Jud. Notice, Ex. B.) (Opp'n to Pl.['s] Mot. to Remand, Declaration of Aaron Belzer, Ex. A).

Accordingly, based on the totality of the above referenced facts, the Court finds that Raytheon Company's principal place of business is in Waltham, Massachusetts. As Defendant Raytheon SAS is an unincorporated division of Raytheon Company, it does not possess citizenship independent of its parent corporation, Raytheon Company. *See Breitman*, 37 F.3d at 564. Therefore, under *Breitman*, the Court finds Defendant Raytheon SAS's principal place of business to be in Waltham, Massachusetts for purposes of determining diversity jurisdiction.

The Court also notes that this Action is analogous to the Southern District Court of California's recent decision, *In re Hydroxycut Marketing and Sales Practices Litigation*, No. 09MD2087, 2010 WL 2998855, at *2–4 (S.D.Cal. July 29, 2010). There, plaintiffs alleged that defendant was a non-diverse New York based company because it had a large facility in New York. The Court disagreed, noting that the high level executive decisions were made in Ontario, Canada, despite the presence of the large New York facility. Similarly, in the present Case, Plaintiff assumes Defendant Raytheon SAS is a California company because of its highly visible business activities within the state; however, Defendant has pled facts indicating its executive-level decisions are made from Raytheon Company's Waltham, Massachusetts headquarters and, under the

"nerve center" test, the Court finds that to be determinative.

Therefore, the Court finds that because there is complete diversity of citizenship between the Parties, and the amount in controversy requirement is not disputed, the Court has proper subject matter jurisdiction to hear this Case. As such, the Court **DENIES** Plaintiff's Motion to Remand on the basis of diversity jurisdiction.

Third, Plaintiff argues this Court lacks federal question jurisdiction and should apply California common law to resolve the Case at bar. Defendant argues, in Opposition, that this Case implicates unique federal interests and requires the application of uniform federal common law thereby giving this Court federal question jurisdiction.

■ 28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The burden of establishing federal question jurisdiction falls on the party invoking the removal statute. *Williams v. Caterpillar Tractor Co.*, 786 F.2d 928, 930 (9th Cir.1986). The fact that the movant must prove that the lawsuit involves a uniquely federal interest does not, however, authorize federal courts to invoke federal common law jurisdiction, "[it] merely establishes a necessary, not a sufficient, condition for the displacement of state law." *Boyle v. United Tech. Corp.*, 487 U.S. 500, 507, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). "Displacement will occur only where ... a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law' ... or the application of state law would 'frustrate specific objectives' of federal legislation. ..." *Id.* (citations omitted). *See also Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 16 L.Ed.2d 369 (1966) (noting that in decid-

ing whether to fashion rules of federal common law, "normally the guiding principle is [the existence of] a significant conflict between some federal policy or interest and the use of state law ...").

■ Thus, federal common law jurisdiction replaces existing state law in this Case "only if (1) the dispute implicates a uniquely federal interest and (2) a significant conflict exists between an identifiable federal policy or interest and the application of state law to the dispute or the application of state law would frustrate specific objectives of federal legislation." *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981); *Boyle*, 487 U.S. at 507, 108 S.Ct. 2510.

■ Under *Erie Railroad v. Tompkins*, having found diversity jurisdiction proper, this Court would ordinarily apply California state law to resolve the claims at issue in this Action. 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This presumption is further bolstered by the Letter Subcontract, authored by Defendant, holding "irrespective of the place of performance, this Purchase Order will be construed and interpreted according to the laws of the State from which the Purchase Order is issued, without resort to the State's Conflict of Law Rules." (Pl.['s] Mot. to Remand, Declaration of Brian Donovan, ¶ 2, Ex. 1, at 2.) The above referenced Purchase Order was issued in California. *Id.* However, if Defendant meets its burden of proving federal question jurisdiction, this Court will be compelled to replace California state law with federal common law to resolve this Case. *Boyle*, 487 U.S. at 507, 108 S.Ct. 2510.

Defendant asserts this Case involves a uniquely federal interest because the dispute involves performance of a subcontract under a government defense procurement contract, containing standard federal con-

tract clauses. Defendant argues the disputed subcontract implicates national security and requires the imposition of federal common law to interpret the standard federal clauses consistently with existing federal precedent.

Defendant relies principally on the Ninth Circuit case of *New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953 (9th Cir. 1996). *New SD* involved a dispute between a prime contractor and its subcontractor on an Air Force contract for the development of a space based anti-ballistic missile. *Id.* The Ninth Circuit held that "the construction of subcontracts, let under prime contracts connected with the national security, should be regulated by a uniform federal law." *New SD,* 79 F.3d at 955 (quoting *American Pipe & Steel Corp. v. Firestone Tire & Rubber Co.,* 292 F.2d 640, 644 (9th Cir.1961)). Since the dispute in *New SD* involved a prime contractor and a subcontractor on a government contract clearly implicating national security interests, the Court found federal common law must replace state law in order to provide a uniform federal standard which would prevent the cost of national security from being "increased in the process." *New SD,* 79 F.3d at 955. However, the Court finds that this case relied upon by Defendant concerns matters of national security that are simply not present here.

Furthermore, Defendant argues that this Case requires the imposition of federal common law because "significant federal interests" may be affected and it's defense will rely on Federal Acquisition Regulation (hereinafter, "FAR") clauses incorporated into the Letter Subcontract. Additionally, Defendant avers that if found liable for breach of contract to Plaintiff, it may be able to pass on its damages to the United States Government through the prime contractor on the "ISIS" project.[2]

The Court finds Defendant's arguments unpersuasive. The underlying issue in this Case is whether Defendant promised to enter into a definitive subcontract with Plaintiff. Plaintiff alleges Defendant took advantage of its "small business" status in order to win the bid from Lockheed Martin, the prime contractor for the ISIS project. Plaintiff argues Defendant breached a contract to negotiate a future definitive subcontract in good faith, and that Defendant committed fraud because it never intended to honor the agreement between the Parties.

The fact that Defendant may rely on FAR clauses in its defense, and may try to pass off damages it incurs to the United States Government does not satisfy either of the requirements set forth in *Boyle* that a removing party must show (1) the dispute implicates a uniquely federal interest and (2) there is a significant conflict between an identifiable federal policy or interest and the application of state law to the dispute, or that the application of state law would frustrate specific objectives of federal legislation. 487 U.S. at 507, 108 S.Ct. 2510. The Court finds the contract-based claims raised in Plaintiff's Complaint relate to an agreement to negotiate a future definitive subcontract between the Parties in which no substantial rights or duties of the United States are implicated.

This Case is factually analogous to *Northrop Corp. v. AIL Systems, Inc.,* 959 F.2d 1424 (7th Cir.1992), in which the plaintiff sued the defendant for an alleged breach of a "teaming agreement." There, the parties successfully "teamed" up to win a bid for an Air Force contract and while

---

**2.** The goal of the ISIS project is to develop an airship capable of operating for long periods of time at "stratospheric altitudes" with fixed radars "capable of tracking small missiles, vehicles and persons in a manner" beyond the Government's current capabilities. (Compl. ¶ 5).

they initially worked together, defendant eventually refused to subcontract out the work to plaintiff in order to realize a cost-reduction. *Id.* at 1425. The Seventh Circuit held the teaming agreement did not rise to the level of a unique federal interest sufficient to warrant the imposition of federal law because "[t]he federal government is not liable for any damages [Defendant] may owe [Plaintiff] for the alleged breaches of the teaming agreement. Nor is there any indication that the government will pay a higher price for the [contract] if [Defendant] is found liable to [Plaintiff]." *Id.* at 1427.

Thereafter, the Ninth Circuit held the *New SD* and *Northrop* decisions to be in harmony because the source of the *Northrop* dispute arose from the "teaming agreement," not the actual "subcontracts which govern actual work being performed on federal projects that implicate federal interests much more directly." *New SD,* 79 F.3d at 955 (quoting *Northrop,* 959 F.2d at 1428).

Here, the Plaintiff's Complaint is devoid of any question of unique federal interest and simply alleges a dispute over the meaning of the Letter Subcontract's provision requiring the Parties to negotiate in good faith a subsequent definitive subcontract. Thus, Plaintiff's claims are based on its right to be a potential subcontractor of later phases of the ISIS subcontract.

On balance, this is not a case, like *New SD* or *American Pipe* "[w]here the federal interest requires that 'the rule must be uniform throughout the country,' [and determining that the] 'entire body of state law applicable to the area conflicts and is replaced by federal rules.'" *New SD,* 79 F.3d at 955 (citing *American Pipe* at 643). Rather, this Case is much more similar to *Northrop* because the source of the dispute is not the quality of work under the subcontract but on an alleged agreement promising future subcontracting work.

Additionally, the Parties are a step further removed from privity with the United States Government as this dispute does not involve a prime contractor. Nor is national security so clearly implicated, as the disputed ISIS phase lacked a defense priority rating.

While Defendant has cited several FAR clauses present in the Letter Subcontract, Defendant has not shown that an understanding and interpretation of such clauses requires application of federal common law. Nor has Defendant alleged in what way the application of California state law offends the proper resolution of this matter. Defendant's bald assertion that it "may be able to pass on to the Government" its potential damages owed to Plaintiff, also falls short of satisfying the *Boyle* standard in which the Supreme Court contrasted cases where Government liability was merely speculative versus actual and imminent, thereby requiring the application of federal common law. *See Boyle,* 487 U.S. at 506–07, 108 S.Ct. 2510. *See also New SD,* 79 F.3d at 954 (noting the FAR clause in the contract would require the Government to pay for any damages the defendant prime contractor caused the plaintiff subcontractor, therefore finding the application of federal common law necessary to prevent escalating national security costs to the United States).

Here, unlike in *New SD,* but consistent with *Northrop,* Defendant has not pled any facts indicating that the cost of National Security stands to be increased should it be held liable under Plaintiff's breach of contract and fraud claims. Moreover, Defendant has failed to persuade the Court that applying California law to resolve the current matter will conflict with a significant federal policy or interest. Defendant claims that several FAR clauses are implicated and will form the basis of "one of its major defenses" (Opp'n to Pl.['s] Mot. to

Remand, 11), but fails to plead anything beyond such conclusory statements. Therefore, the Court finds that Defendant has not met its burden of proving that the imposition of federal common law is required, and as such, this Court does not have federal question jurisdiction and will apply California law to resolve the present dispute.

However, the Court still finds it has subject matter jurisdiction on the basis of diversity to hear the present matter. Accordingly, the Court **DENIES** Plaintiff's Motion to Remand.

### 3. *Motion To Dismiss*

Defendant argues that Plaintiff has failed to satisfy the heightened pleading requirements of Rule 9(b) as to its second cause of action for fraud.

■ Under California law "[t]he elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Super. Ct.*, 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377, 909 P.2d 981 (1996).

■ While the substantive elements of a fraud claim are determined by state law, the procedural requirements are governed by Rule 9(b)'s heightened pleading standard. *Vess*, 317 F.3d at 1103. While each element of a fraud claim must be alleged with heightened particularity, conditions of the mind may be averred generally. Fed. R.Civ.P. 9(b). The allegations of fraud must be accompanied by the who, what, where, when, and how of the fraud charged. *Vess*, 317 F.3d at 1106.

■ The Court finds that Plaintiff has pled with particularity the elements of fraud under California law. Plaintiff's Complaint pleads with particularity facts indicating Defendant made material misrepresentations as to its intent to contract with Plaintiff a long term definitive subcontract, and that Plaintiff reasonably relied on these misrepresentations to its detriment. Contrary to Defendant's argument, the Court finds Plaintiff need not plead an exact amount of damages in its Complaint. *See Toscano v. Ameriquest Mortg. Co.*, No. CIV–F–07–0957, 2007 WL 3125023, at *6 (E.D.Cal. Oct. 24, 2007).

The Court finds that Plaintiff has also sufficiently pled the scienter requirement of fraud by averring generally facts which indicate Defendant knew its misrepresentations were false at the time of contracting. *See Locke v. Warner Bros., Inc.*, 57 Cal.App.4th 354, 368, 66 Cal.Rptr.2d 921 (Ct.App.1997) (holding "[f]raudulent intent must often be established by circumstantial evidence, and may be inferred from such circumstances as defendant's . . . failure even to attempt performance . . .").

Therefore, the Court finds Plaintiff has pled with particularity the elements of a fraud claim under Rule 9(b), and Defendant's Motion to Dismiss for failure to state a claim for fraud is hereby **DENIED**.

### IV. *Conclusion*

For the reasons heretofore stated, the Court **DENIES** both Plaintiff's Motion to Remand, and Defendant's Motion to Dismiss Plaintiff's second cause of action for fraud pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

**IT IS SO ORDERED.**