ATALANTA CORPORATION, Amilite
Corporation and IBM
Corporation, Plaintiffs,

v.

POLSKIE LINIE OCEANICZNE d/b/a
Polish Ocean Lines, Westwood Ship-
ping Lines, Evergreen Marine Corpora-
tion, Horn Line OHG, and Argo Reed-
erei Richard Adler & Sohne, Defend-
ants.

CHRYSTAL INTERNATIONAL
CORP., Plaintiff,

v.

POLISH OCEAN LINES, Horn Line
Reederei G.M.B.H., Argo Reederei, and
the vessels "Hornbelt," "Jan Kahrs,"
and "Algol," their engines, etc., Defend-
ants.

Nos. 86 Civ. 5879 (RLC), 86 Civ.
8103 (RLC).

United States District Court,
S.D. New York.

March 3, 1988.

Donovan, Maloof, Walsh & Kennedy, New York City, for plaintiffs Atalanta, Amilite and IBM; Edward C. Radzik, of counsel.

Cuccia Oster & Hansburg, New York City, for plaintiff Chrystal Intern.; Frederick J. Cuccia, of counsel.

Kirlin, Campbell & Keating, New York City, for defendant Westwood; Keith W. Heard, of counsel.

Freehill, Hogan & Mahar, New York City, for defendants Horn Line and Polish Ocean Lines; Peter D. Clark, James L. Ross, of counsel.

Cichanowicz, Callan & Keane, New York City, for defendant Evergreen; Paul M. Keane, Joseph F. De May, Jr., of counsel.

Healy & Baillie, New York City, for defendant Argo; Howard M. McCormack, Elisa M. Pugliese, of counsel.

## OPINION

ROBERT L. CARTER, District Judge:

Plaintiffs Atalanta Corporation, Amilite Corporation and IBM Corporation, United States corporations with their principal places of business in New York, allege that on or about October 25, 1985, they each delivered a cargo of merchandise for shipment from Helsinki, Finland, to the Port of New York,[1] and received a clean, on-board through bill of lading from one of three carriers (collectively the "Through–Carriers"). Atalanta delivered its cargo to defendant Polish Ocean Lines, a foreign corporation doing business in New York through an agent; Amilite entrusted its cargo to Westwood Shipping Lines, an American corporation doing business in New York through an agent; and IBM gave over its cargo to Evergreen Marine Corporation, a foreign corporation with a New York subsidiary. In each instance, the goods were loaded on board defendant Horn Line's merchant vessel HORNBELT,[2] for pre-carriage to Bremerhaven, West Germany;[3] from there, on-carriage to the United States was to be aboard ships owned by Polish Ocean Lines, Westwood and Evergreen, respectively. En route to Bremerhaven, in German territorial waters, the HORNBELT collided with the merchant vessel ALGOL, owned and operated by defendant Argo Reederei Richard Adler & Sohne ("Argo"). Plaintiffs' cargoes suffered damage as a result.

---

**1.** Amilite's cargo was ultimately bound for Oakland, California.

**2.** Defendant Polish Ocean Lines represented to its shippers (plaintiff Atalanta, and plaintiff Chrystal International in the consolidated case) that their cargoes would be precarried upon a vessel other than the HORNBELT. These representations are the subject of separate claims by those two plaintiffs.

**3.** At the time, the HORNBELT was on charter to United Shipping Agencies of Denmark, whose agent apparently issued bills of lading to the Through–Carriers covering pre-carriage.

The Seeamt, the German administrative body charged with investigating maritime matters, ruled on March 31, 1987, that the HORNBELT was fully responsible for the collision. Upon appeal, the Oberseeamt modified that ruling and found that the ALGOL shared one-third of the blame.[4]

Argo and Horn Line have each moved to dismiss the complaint for lack of personal jurisdiction and for *forum non conveniens*. Plaintiffs oppose Horn Line's motion, but not Argo's. The remaining defendants (i.e. the Through–Carriers) oppose Argo's and Horn Line's motions to dismiss, and in the alternative ask the court to dismiss the entire action on *forum non conveniens* grounds, in the event that it dismisses the action as to Argo and Horn Line.

In the consolidated case, plaintiff Chrystal International Corporation seeks damages from Polish Ocean Lines, which issued it a bill of lading at Helsinki, and from Horn Line and Argo. Chrystal International's cargo was also lost on board the HORNBELT. Polish Ocean Lines has moved for dismissal of the consolidated action on *forum non conveniens* grounds.

## DISCUSSION

### A. *Personal Jurisdiction*

■■■ Since the court's admiralty jurisdiction is invoked, 28 U.S.C. § 1333(1), the law of New York determines defendants' amenability to suit in this forum. *Gipromer v. S.S. Tempo*, 487 F.Supp. 631, 633 (S.D.N.Y.1980) (MacMahon, J.); *Societe Commerciale de Transports Transatlantiques v. S.S. "African Mercury"*, 366 F.Supp. 1347, 1349 (S.D.N.Y.1973) (Tenney, J.); *see Arrowsmith v. United Press Int'l*, 320 F.2d 219, 222–31 (2d Cir.1963) (Friend-

ly, J.); *Lamar v. American Basketball Ass'n*, 468 F.Supp. 1198, 1201 (S.D.N.Y. 1979) (Haight, J.) (diversity jurisdiction).[5] To defeat defendants' motions to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), F.R.Civ.P., the opposing parties must make a *prima facie* showing by alleging facts which, if true, would support the court's exercise of jurisdiction over the moving parties. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981); *Grove Valve & Regulator Co., Inc. v. Iranian Oil Services Ltd.*, 87 F.R.D. 93, 96 (S.D.N.Y.1980) (Weinfeld, J.).[6]

■■■ Defendant Evergreen stands alone in opposing Argo's motion to dismiss. While Argo has never directed a voyage to the United States, it did once, in 1979, charter one of its vessels to a third party who, in turn, called at the port of Miami. Muller Statement pursuant to 28 U.S.C. § 1746, Feb. 20, 1987, ¶¶ 3, 5. Evergreen contends that this act constitutes "doing business" within the meaning of N.Y.Civ. Pract.L. § 301. Even were a contact with the state of Florida relevant to Argo's amenability to suit in New York, it is well-recognized that § 301 envisions a party's presence in the jurisdiction "not occasionally or casually, but with a fair measure of permanence and continuity." *Laufer v. Ostrow*, 55 N.Y.2d 305, 310, 449 N.Y.S.2d 456, 458, 434 N.E.2d 692, 694 (1982) (quoting *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 268, 115 N.E. 915 (1917) (Cardozo, J.)); *Metal Transport Corp. v. Canadian Transport Co.*, 526 F.Supp. 234, 235 (S.D.N.Y.1981) (Weinfeld, J.). To assert jurisdiction over a party on the basis of an isolated contact unrelated to the cause of action would, in any event, offend against due process. *See* Restatement (2d) Conflict of Laws § 35(3) and comment e (citing *Per-*

---

**4.** A limitation proceeding brought by Argo is presently pending in the Federal Republic of Germany. All of the other defendants have filed claims in that proceeding.

**5.** The court declines Evergreen's invitation to apply a "national contacts" test. Most courts have frowned upon such an approach to *in personam* admiralty actions. Casad, Jurisdiction in Civil Actions, ¶ 5.07 at 5–55 to 5–56 (1983 & Supp.1986); *see Engineering Equipment Co. v.*

*S.S. Selene*, 446 F.Supp. 706, 709 n. 11 (S.D.N.Y. 1978) (MacMahon, J.) (dicta). *But see Fosen v. United Technologies Corp.*, 484 F.Supp. 490, 498–501 (S.D.N.Y.) (Tenney, J.), *aff'd without opinion*, 633 F.2d 203 (2d Cir.1980) (finding insufficient national contacts to sustain jurisdiction).

**6.** Of course, where the court conducts an evidentiary hearing, the party asserting jurisdiction must establish it by a preponderance of the evidence. *Marine Midland*, 664 F.2d at 904.

*kins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952)).[7] Argo's motion to dismiss must therefore be granted.

■ Horn Line's Rule 12(b)(2) motion is opposed by the plaintiffs, as well as by defendants Westwood and Evergreen, who argue that New York's long-arm statute, N.Y.Civ.Pract.L. § 302(a)(3), subjects Horn Line to the *in personam* jurisdiction of this court.[8] Before jurisdiction will lie under this provision, the court must find (a) that the defendant committed a tortious act outside the state (b) causing injury within the state; (c) that the defendant "expects or should reasonably expect the act to have consequences in the state"; and (d) that the defendant "derives substantial revenue from ... international commerce." *Id.; Fantis Foods, Inc. v. Standard Importing Co., Inc.,* 49 N.Y.2d 317, 325, 425 N.Y.S.2d 783, 786, 402 N.E.2d 122, 124 (1980).

At issue here are the second and third requirements. The injury resulting from an out-of-state tort does not have its situs in New York merely by virtue of the fact that the injured party resides there and suffers pecuniary loss there. *Fantis,* 49 N.Y.2d at 325–27, 425 N.Y.S.2d at 786–87, 402 N.E.2d at 124–26; *Cooperstein v. Pan–Oceanic Marine, Inc.,* 124 A.D.2d 632, 507 N.Y.S.2d 893, 895 (1st Dep't 1986), *appeal denied,* 69 N.Y.2d 611, 511 N.E.2d 84 (1987). Loss of profits in the forum state, if the foreseeable consequence of an out-of-state tort, may confer jurisdiction under § 302(a)(3). *Fantis,* 49 N.Y.2d at 326, 425 N.Y.S.2d at 786–87, 402 N.E.2d at 124–26. It is not enough, however, that plaintiffs assert in their memorandum of law that they *may* be able to establish loss of sales, customers and good will in New York,

Plaintiffs' Br. at 6, while alleging no concrete damages in their complaint. *See* Complaint, ¶¶ 18, 28, 34, 39. In addition, the assertion that defendant Horn Line was aware that plaintiffs' goods were ultimately destined for New York, even if true,[9] does not make out the requirement of foreseeability, where forum consequences are "at best speculative". *Fantis,* 49 N.Y.2d at 326 & nn. 3–4, 425 N.Y.S.2d at 786–87 & nn. 3–4, 402 N.E.2d at 124–25 & nn. 3–4.

Horn Line's posture here is strikingly similar to that of the moving party in *Hansa Marine Ins. Co. v. Ocean Tramping Co., Ltd.,* 580 F.Supp. 1532 (S.D.N.Y.1984) (Cannella, J.). There, a Swedish shipowner chartered its vessel to a third party who directed the shipowner to carry goods from Holland to Canada. The charterer issued its own bill of lading to the plaintiff, whose goods, ultimately destined for New York, were damaged on board. The plaintiff asked the court to exercise long-arm jurisdiction over the shipowner, whose only "contact" with New York was the fact that some of its ship's cargo was to be transshipped to New York. The court declined to do so, finding that the plaintiff failed to show, *prima facie,* that the situs of its injury was New York and that the shipowner could reasonably expect its actions to have consequences in New York. *Id.* at 1535–36. Here too, Horn Line's only conceivable relationship to the forum state lies in the fact that its ship carried goods which were ultimately to be carried by another to New York. Plaintiffs have failed to show that New York was the situs of the injury they suffered, and in any event, no forum consequences were reasonably foreseea-

---

**7.** Evergreen asks for discovery on the issue of jurisdiction; even now, after more than a year of discovery, however, Evergreen has come forward with no sufficient jurisdictional allegation.

**8.** Section 302(a)(3), N.Y.Civ.Pract.L., provides: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary ... who in person or through an agent ... commits a tortious act without the state causing injury to person or property within the state ... if he (i) regularly does or solicits busi-

ness, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce...."

**9.** Horn Line has submitted the cargo manifest of the HORNBELT, which shows Bremerhaven, not New York, as the destination of plaintiffs' cargoes. Baumgarten Aff't, ¶ 5 & Ex. A.

ble.[10]

## B. *Forum Non Conveniens*

Because the court is without jurisdiction over defendants Horn Line and Argo, it is not necessary to reach their motions to dismiss on *forum non conveniens* grounds. The Through–Carriers, however, argue that the dismissal of Horn Line and Argo will render this forum so inconvenient as to warrant dismissal of the remaining claims as well.

■ The doctrine of *forum non conveniens* applies only to those parties subject to the court's jurisdiction, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504, 67 S.Ct. 839, 841, 91 L.Ed. 1055 (1947), and only where the plaintiff is guaranteed an adequate alternative forum in which to pursue his claim. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 263 n. 22, 70 L.Ed.2d 419 (1981), *reh'g denied*, 455 U.S. 928, 102 S.Ct. 1296, 71 L.Ed.2d 474 (1982). The doctrine counsels dismissal only in the extraordinary case in which "trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper*, 454 U.S. at 249, 102 S.Ct. at 262; *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843 ("unless the balance [of the convenience interests of the litigants] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"). *Gilbert's* balancing test of private and public interest factors governs this admiralty action. *Alcoa Steamship Co., Inc. v. M/V Nordic Regent*, 654 F.2d 147, 153–54 (2d Cir.) (en banc), *cert. denied*, 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980).

■ As a threshold matter, the court notes that an alternative forum exists in the Federal Republic of Germany, in whose courts is currently pending a limitation proceeding arising out of the HORNBELT's collision with the ALGOL. All of the Through–Carriers herein have filed claims in that proceeding. Letter of Pugliese to the Court, Jan. 27, 1988. In addition, as has been noted, administrative investigation of the collision has already proceeded to the appellate level in Germany.

Turning to the *Gilbert* factors, the court concludes that this litigation should proceed as a whole in Germany. The collision occurred in German territorial waters, giving Germany a "very strong interest in this litigation." *Piper*, 454 U.S. 260, 102 S.Ct. 268. The liability *vel non* of the Through–Carriers depends on whether Horn Line exercised due diligence in making its vessel seaworthy, 46 U.S.C. § 1303(1)(a),[11] and on whether the collision, insofar as the HORNBELT was at fault, resulted from the navigational error of Horn Line's servants. 46 U.S.C. § 1304(2)(a). *See M. Prussman Ltd. v. M.V. Nathanel*, 670 F.Supp. 1141, 1143–44 (S.D.N.Y.1987) (Sweet, J.) (non-vessel operating common carrier ("NVOCC") held to same standard of liability as owner or charterer under Carriage of Goods by Sea Act).[12] The evi-

---

**10.** Foreseeability, in its constitutional dimension, requires that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567 (1980). This presents a different inquiry than does the statutory requirement, *Fantis*, 49 N.Y.2d at 326, n. 4, 425 N.Y.S.2d at 787, n. 4, 402 N.E.2d at n. 4; *see World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567, an inquiry which the court does not reach in light of the disposition of the statutory question.

**11.** The bills of lading that the Through–Carriers issued to plaintiffs are "evidence of a contract for the carriage of goods by sea to ... ports of the United States," 46 U.S.C. § 1300; were this action to proceed before this court, it would

thus be governed by the United States Carriage of Goods by Sea Act ("COGSA"). 46 U.S.C. §§ 1300–1315. This is true despite the fact that the loss occurred during precarriage between two foreign ports.

**12.** While it is settled law that one who issues an ocean bill of lading for the through-carriage of goods is "answerable for its complete performance, ... even though part of the carrying is to be done by another carrier and aboard another's vessel," *Bristol Myers Co. v. S.S. Pioneer Land*, 1957 A.M.C. 50, 56 (S.D.N.Y.1956) (Ryan, J.); *Woodhouse, Drake & Carey, Inc. v. M/V Righteous*, 710 F.2d 1523, 1526 (11th Cir.1983) (issuer of through bill of lading liable for miscarriage of connecting carrier); *see also Abdul Jabbar Hassan Najem El–Khateib v. S.S. Euro-*

dence and witnesses relevant to both of those issues lie in the hands of Horn Line, a German citizen over whom this court lacks jurisdiction. Thus, important sources of proof are not readily accessible here, and the defendants do not have the benefit of compulsory process to obtain them.

Moreover, the very issues that would arise in the liability phase of a trial of this action have already been decided by an administrative body in Germany. *Cf. Dahl v. United Technologies Corp.*, 472 F.Supp. 696, 700 (D.Del.1979), *aff'd*, 632 F.2d 1027, 1030 (3d Cir.1980) (ongoing investigation of helicopter accident by Norwegian authorities weighed against court's retention of jurisdiction). To redecide these issues here not only would be wasteful of judicial resources, *Pain v. United Technologies Corp.*, 637 F.2d 775, 790 (D.C.Cir.1980), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981), but would run the risk of subjecting the Through–Carriers (who, if held liable to these plaintiffs, will be forced to seek indemnity against Horn Line and Argo in Germany) to inconsistent adjudications. *Piper*, 454 U.S. at 259, 102 S.Ct. at 267 (inability to implead third parties for indemnity renders forum inconvenient; it is preferable "to resolve all claims in one trial"); *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 453 (2d Cir.1975), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed. 2d 641 (1976) (same).

Neither plaintiffs' American citizenship, *Alcoa*, 654 F.2d at 152–53, nor the fact that evidence of their damages is situated here, is sufficient to overcome the overwhelming public and private inconvenience of proceeding in this forum. In order to "ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconven-

ience or prejudice," *Pain v. United Technologies Corp.*, 637 F.2d at 785, it is appropriate that the court attach conditions to a *forum non conveniens* dismissal, specifically that defendants consent to the jurisdiction of the alternative forum and waive their statute of limitations defenses in that forum. *See Schertenleib v. Traum*, 589 F.2d 1156, 1159–64 (2d Cir.1978); *Farman-farmaian v. Gulf Oil Corp.*, 437 F.Supp. 910, 915–923 (S.D.N.Y.1977) (Carter, J.), *aff'd*, 588 F.2d 880 (2d Cir.1978). It is on such conditions that the Through–Carriers' motion is granted.

■ Plaintiffs Atalanta and Chrystal International, however, have brought claims against defendant Polish Ocean Lines ("POL") for material misrepresentation in the bills of lading issued by that defendant. Specifically, it is alleged that POL's bills recited that pre-carriage would be on the vessel JAN KAHRS, not on the HORN-BELT, and that POL's breach of the contracts of carriage in this respect estops it from asserting its contractual or statutory defenses. As to these claims, the outcome of which depends upon the application of federal law to apparently undisputed facts, no sufficient reason has been shown for the court to disturb plaintiffs' choice of forum. The court accordingly retains jurisdiction of defendant Polish Ocean Lines solely with respect to the misrepresentation claims of plaintiff Atalanta and plaintiff Chrystal International.

## CONCLUSION

For the foregoing reasons, the complaints in the original and consolidated actions are dismissed in all respects as

---

*freighter*, 1980 A.M.C. 893 (S.D.N.Y.1979) (Sweet, J.), the only reported decisions that have addressed the *standard* of a through-carrier's liability under COGSA for cargo loss incurred during carriage by another have done so *sub silentio*. Nonetheless, the consensus that the through-carrier's liability is vicarious in such situations appears sound. By analogy, the commentary to Section 7–302 of the Uniform Commercial Code is instructive:

"Where the obligations or standards applicable to different parties bound by a document of title are different, *the initial carrier's responsibil-*

*ity for portions of the journey not on its own lines will be determined by the standards appropriate to the connecting carrier.* Thus a land carrier issuing a through bill of lading involving water carriage at a later stage will have the benefit of the water carrier's immunity from liability for negligence of its servants in navigating the vessel, where the law provides such an immunity to water carriers and the loss occurred while the goods were in the water carrier's possession."

U.C.C. § 7–302, Official Comment (3) (emphasis added).

against defendants Horn Line and Argo for want of *in personam* jurisdiction. The cross-motion of defendant Polish Ocean Lines for a *forum non conveniens* dismissal is denied with respect to the second cause of action brought against it by plaintiff Atalanta (Amended Complaint, 86 Civ. 5879, ¶¶ 19–22), and plaintiff Chrystal International (Complaint, 86 Civ. 8103, ¶¶ 13–17). In all other respects, the *forum non conveniens* motions of defendants Polish Ocean Lines, Evergreen Marine Corporation and Westwood Shipping Lines are granted, on condition that they submit to the jurisdiction of the courts of the Federal Republic of Germany, and to service of process there, and that they waive, for a period of one year, any statute of limitations defense they may have against plaintiffs arising from the same transaction or occurrence as the action hereby dismissed.

IT IS SO ORDERED.