**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, as subrogee of Lowe's Companies, Inc., Plaintiff,**

v.

**HANJIN SHIPPING COMPANY; Fritz Companies, Inc.; O'Hare Services; and Channel Distribution, Defendants.**

No. 00 C 5226.

United States District Court,
N.D. Illinois,
Eastern Division.

June 14, 2002.

court's findings of fact and conclusions of law, in accordance with Federal Rule of Civil Procedure 52(a). To the extent that a finding of fact as stated may be considered a conclusion of law, it shall be considered as a conclusion of law. Similarly, to the extent that a conclusion of law as stated may be considered a finding of fact, it shall be considered as a finding of fact. *See Allergy Asthma Tech., Ltd. v. I Can Breathe, Inc.,* 195 F.Supp.2d 1059, 1061 (N.D.Ill.2002). For the following reasons, the court enters judgment in favor of Plaintiff against Defendant Hanjin Shipping Company in the amount of $236,032.71.

John Joseph McInerney, Howard B. Randell, Bozidar Robert Ostojic, Leahy, Eisenberg & Fraenkel, Chicago, IL, for plaintiff.

Michael A. Snyder, Conklin, Murphy, Conklin & Snyder, Chicago, IL, Paul V. Byrne, Jr., Law Offices of Paul V. Byrne, Jr., Chicago, IL, for defendant Hanjin Shipping Co.

Stephen C. Veltman, Frances M. Chua, Pretzel & Stouffer, Chtd., Chicago, IL, for defendant O'Hare Services.

Zacarias R. Chacon, Jr., Blatt, Hammesfahr & Eaton, Chicago, IL, Joseph Gerard Lyons, Bruce Michael Lichtcsien, Cozen & O'Connor, Chicago, IL, for defendant Channel Distribution.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

NORGLE, District Judge.

The court has conducted a bench trial in this matter. What follows constitutes the

### I. FINDINGS OF FACT

This case arose out of the loss of a cargo of power tools that were shipped from China to the United States. The court begins with a list of parties to the lawsuit and a brief description of their roles. Plaintiff is Indemnity Insurance Company of North America ("Indemnity"). Indemnity insured the shipment and paid the consignee of the shipment, Lowe's Company[1], $236,032.71 for the loss. Defendant Hanjin Shipping Company was the ocean carrier, and issued a through bill of lading to transport the shipment from Shenzhen, China to Lowe's facility in North Vernon, Indiana. Defendant Fritz Companies acted as the Customs Broker for the shipment. Defendants O'Hare Services and Channel Distribution contracted with the United States Customs Service to provide a "Centralized Examination Station[2]," where the Customs Service performed an intensive examination of the cargo.

---

1. The transit documents specify the consignee as LGS Sourcing, Inc., a subsidiary of Lowe's Company. For simplicity, the court refers to both LGS and Lowe's as "Lowe's."

2. For further information concerning Customs Examination Stations, *see generally* 19 C.F.R. § 118.1 et seq.

The events took place during the summer of 1999. Lowe's purchased the power tools from Black & Decker, and hired Hanjin to transport the tools from China to the United States. On July 13 & 14, 1999, Hanjin issued a waybill and a bill of lading[3] to transport one 40' shipping container containing the tools. Per the waybill and bill of lading, Hanjin agreed to carry the container from Shenzhen, China to North Vernon, Indiana.

The plan was for the container to be carried via ocean vessel to Long Beach, California, then railed to Chicago, and delivered by motor carriage to the destination in North Vernon, Indiana. On August 4, 1999, the U.S. Customs Service informed Fritz Companies that the container and its contents would be subject to an intensive Customs examination upon arrival in Chicago. A couple of days later, Fritz made advance arrangements with Hanjin and a local motor carrier to have the container delivered to O'Hare Services/Channel Distribution for the Customs examination.

The goods arrived in Chicago on August 10, 1999. Thereafter, the U.S. Customs Service issued a permit for the container to be transported to O'Hare Services for the examination. The container was taken to O'Hare Services, and the Customs examination took place on August 26, 1999. After Customs completed its examination, it notified both Fritz and Hanjin that the container and its contents were released and ready to be picked up. For several days thereafter, the container remained in a lot at O'Hare Services/Channel Distribution.

On September 3, 1999 a "Yard Check Report" at O'Hare Services/Channel Distribution showed that the container was in the lot at O'Hare Services. However, on September 10, 1999, it was discovered that the container was missing. The container was found a short time later, but the contents were gone.

Indemnity paid Lowe's for the loss and then filed this suit. Indemnity alleged the following eight counts: (I) a claim under the Carriage of Goods by Sea Act ("COGSA") against Hanjin; (II) a claim under the Carmack Amendment against Fritz; (III) a common law bailment claim against O'Hare Services; (IV) a common law negligence claim against O'Hare Services; (V) a common law bailment claim against Channel Distribution; (VI) a common law negligence claim against Channel Distribution; (VII) a Carmack Amendment/federal common law claim against Hanjin; and (VIII) a Carmack Amendment claim against O'Hare Services.

Prior to trial, Indemnity voluntarily dismissed its claim against Fritz. At the close of Indemnity's case, O'Hare Services and Channel Distribution made an oral motion for judgment as a matter of law. The court granted that motion from the bench for the reasons stated in open court. Thus, what remains are Indemnity's claims against Hanjin under COGSA, the Carmack Amendment, and federal common law.

Indemnity and Hanjin have each submitted proposed findings of fact and conclusions of law. Indemnity takes the position that COGSA does not apply because COGSA by its terms does not govern losses that occur during inland transportation. Indemnity asserts that Hanjin is liable under the Carmack Amendment and federal common law. Hanjin takes the position that COGSA applies to the inland transit

---

**3.** Waybills and bills of lading are documents customarily used in the transportation industry for a variety of purposes, such as the memorializing the terms and conditions of the contract of carriage, and documents of title for the goods carried.

of the cargo because of a "clause paramount" in the waybill and bill of lading. According to Hanjin, technical defenses under COGSA relieve it from liability.

## II. CONCLUSIONS OF LAW

This case is simple on its facts, but presents legal questions that are quite complex. A preface is necessary on the state of the transportation industry and its governing laws. In recent years, the transportation industry has undergone a fundamental transformation due to the proliferation of shipping containers. Shipping containers are structural boxes that adapt easily to multiple modes of transportation, such as ocean vessel, rail, and motor carriage. Persons using containers enjoy the economy that comes from having cargo loaded into a container at its origin, and then remaining (hopefully) undisturbed in the container until arrival at destination. With the use of a container, there is no need to re-stow cargo from ship to train to truck. Instead, the cargo is loaded once into the container at its origin and then unloaded once from the container at its destination, and the interim transportation is much more efficient than earlier transportation methods. The industry term for such transportation is "multimodal" or "intermodal." *See e.g. Tokio Marine and Fire Ins. Co., Ltd. v. Amato Motors, Inc.*, No. 90 C 4823, 1995 WL 493434 at * 1 n. 3 (N.D.Ill. Aug.15, 1995).

To a certain extent, the law has not kept pace with the industry. Prior to the advent of containers, international cargo was handled more or less piecemeal by the ocean carrier and inland carriers. It was not unusual for a shipper to enter into separate contracts with each of the carriers, and the law developed to reflect that type of segmented transit. For example, COGSA governs the rights and liabilities of the parties while the goods are aboard a ship. 46 U.S.C.App. §. 1301(e). The Harter Act is another maritime statute that dovetails with COGSA and governs, *inter alia*, a certain portion of carriage after discharge from an ocean vessel. *See generally Mannesman Demag Corp. v. M/V CONCERT EXPRESS*, 225 F.3d 587, 591–95 (5th Cir.2000). The Carmack Amendment governs surface transportation such as rail and motor carriage, as well as domestic water carriage. 49 U.S.C. § 13501 et seq.; *Capitol Converting Equip., Inc. v. LEP Transport, Inc.*, 965 F.2d 391, 393–96 (7th Cir.1992).

■ Increased use of containers has led to a corresponding increase in the use of "through bills of lading." A through bill of lading is a contract of carriage that governs the entire transport of cargo from its origin to destination. *See Capitol Converting Equip., Inc.*, 965 F.2d at 393–96; *King Ocean Central America v. Precision Cutting Servs., Inc.*, 717 So.2d 507, 509–10 (Fla.1998). A problem arises when an ocean carrier issues a foreign through bill of lading for goods imported into the United States, because there is no federal statute that governs the liability of the ocean carrier. That gap in statutory coverage creates jurisdictional and choice of law issues for federal courts.

### A. Jurisdiction:

Indemnity asserts that the court has jurisdiction under: (1) 28 U.S.C. § 1333, the court's admiralty and maritime jurisdiction; (2) 28 U.S.C. § 1337, which governs certain claims arising under federal statutes regulating interstate commerce; and (3) 28 U.S.C. § 1367, the court's supplemental jurisdiction. The parties do not attempt to invoke the court's diversity jurisdiction, and there is nothing in the record to demonstrate that the parties are of diverse citizenship.

### 1. Admiralty Jurisdiction:

■ As will be discussed in greater detail below, this is a contract case, with the contract being the through bill of lading. Federal admiralty jurisdiction encompasses contracts that "'have reference to maritime service or maritime transactions.'" *Continental Cas. Co. v. Anderson Excavating & Wrecking*, 189 F.3d 512, 517 (7th Cir.1999) (quoting *North Pacific S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 125, 39 S.Ct. 221, 63 L.Ed. 510 (1919)). This jurisdiction is limited to contracts that are "wholly maritime." *Hartford Fire Ins. v. Orient Overseas Containers Lines*, 230 F.3d 549, 555 (2nd Cir.2000); *R. Maloblocki & Assoc. v. Metropolitan Sanitary Dist.*, 369 F.2d 483, 485 (7th Cir.1966).

■ Generally speaking, contracts of carriage that have elements of ocean and land carriage are "mixed contracts," and do not fall under the court's admiralty jurisdiction. *Hartford Fire*, 230 F.3d at 555; *Lucky–Goldstar, Int'l (America), Inc. v. Phibro Energy Int'l, Ltd.*, 958 F.2d 58, 59–60 (5th Cir.1992); 1 Schoenbaum, *Admiralty and Maritime Law Practitioner Treatise Series*, § 3–10 (3rd ed.2001); 1 Sorkin, *Goods in Transit*, § 3.15[4] (2002). This general rule is subject to two exceptions: (1) where the claim arises from the breach of a maritime obligation that is severable from non-maritime portions of the contract; or (2) where the non-maritime portion of the contract is merely incidental to the maritime obligations. *Hartford Fire*, 230 F.3d at 555; 1 Schoenbaum, *supra*, § 3–10; *see also Inbesa America, Inc. v. M/V ANGLIA*, 134 F.3d 1035, 1036–38 (11th Cir.1998) (collecting authority and analyzing whether six categories of services were maritime or non-maritime); *New York Marine & Gen. Ins. Co. v. S/S "MING PROSPERITY,"* 920 F.Supp. 416, 419–20 (S.D.N.Y.1996) (noting that a primary interest of admiralty law is the protection of maritime commerce). Neither exception applies in this case.

■ First, the loss arose during inland carriage. Even if the contract were severable into sea and land based segments, the loss occurred during inland transit. Thus, the loss did not arise from the breach of a maritime obligation, and the first exception does not apply. *See Hartford Fire*, 230 F.3d at 555.

Second, the inland carriage was substantial. *See id.* at 555–56; 1 Sorkin, *Goods in Transit*, § 3.15[4] (2002). When the inland carriage is substantial, that transportation is not incidental to the maritime portion of the contract, and the second exception will not apply. *See Hartford Fire*, 230 F.3d at 555–56 (and cases cited therein). In this case, the bill of lading called for discharge from the vessel in Long Beach, California and delivery in North Vernon, Indiana, an overland distance of over 2,000 miles. The court cannot exercise admiralty jurisdiction over losses that arise during that type of substantial inland carriage. *See id.*

### 2. Federal Question and Supplemental Jurisdiction:

■ The standards for invoking federal question jurisdiction, such as would apply under § 1337, are not onerous. *See Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1316–18 (7th Cir.1997) (analyzing claims under 28 U.S.C. § 1331); *LaSalle Nat'l Trust v. ECM Motor Co.*, 76 F.3d 140, 143–44 (7th Cir.1996) (same). The test is one of substantiality, so that only the "most extreme" cases will be dismissed for failure to invoke federal question jurisdiction. *Turner/Ozanne*, 111 F.3d at 1316–18; *LaSalle Nat'l Trust*, 76 F.3d at 143–44. Federal jurisdiction is present if the pleadings invoke federal question jurisdiction and present claims that fall under

·the cited federal laws. *Turner/Ozanne*, 111 F.3d at 1316–18; *LaSalle Nat'l Trust*, 76 F.3d at 143–44; Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d*, § 3564. Jurisdiction remains even if the federal claims later prove to be without merit. *Turner/Ozanne*, 111 ·F.3d at 1316–18; *LaSalle Nat'l Trust*, 76 F.3d at 143–44.

■ The same analysis applies to supplemental jurisdiction under § 1367. *See* Wright, Miller & Cooper, *supra*, §§ 3564, 3567.1. 28 U.S.C. § 1367(a) permits the court to hear claims lacking an independent jurisdictional basis, so long as there is a claim within the court's original jurisdiction. When § 1367(a) original jurisdiction is based on a federal question, the same rule of substantiality applies. *See* Wright, Miller & Cooper, *supra*, § 3567.1. The court has jurisdiction over the supplemental claims if the pleadings present a substantial federal claim. *Id.*

■ In this case, the allegations of the first amended complaint come within the court's subject matter jurisdiction. The allegations fall under COGSA and the Carmack Amendment, so the court could not have dismissed for lack of jurisdiction from the face of the pleadings. But, as will become evident in the following discussion, there is no factual basis for the federal claims against Hanjin.

**B. Merits:**

The parties dispute the law that is to be applied to Hanjin. Indemnity asserts that Hanjin is liable under either the Carmack Amendment or federal common law. Hanjin claims that its liability is governed by COGSA. After careful review, the court finds that the parties have missed the mark.

**1. Carmack Amendment:**

■ Indemnity argues that Hanjin is liable under the Carmack Amendment, but that contention is foreclosed by Seventh Circuit case law. The Seventh Circuit has explicitly ruled that the Carmack Amendment is inapplicable to a contract of carriage that originates outside of the United States when the cargo is carried under a foreign through bill of lading. *Capitol Converting Equip., Inc.*, 965 F.2d at 393–95. This is because the jurisdiction of the Carmack Amendment does not extend to ocean shipments originating outside of the United States. *See id.* at 394. The Carmack Amendment is limited to situations where a domestic bill of lading is issued to govern domestic transportation. *See id.* (citing *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.*, 799 F.2d 697, 701 (11th Cir.1986)); *but see Neptune Orient Lines, Ltd. v. Burlington Northern and Santa Fe Ry. Co.*, 213 F.3d 1118, 1119–20 (9th Cir. 2000) (holding without analysis that the Carmack Amendment applies to domestic transportation of imported goods under a foreign through bill of lading); *Canon USA, Inc. v. Nippon Liner Sys., Inc.*, No. 90 C 7350, 1992 WL 82509, at *7–8 (N.D.Ill. Apr.17, 1992) (analyzing and disagreeing with the Eleventh Circuit's opinion in *Swift Textiles, Inc.*, and the District Court's opinion in *Capitol Converting Equip. v. Lep Transport*, 750 F.Supp. 862 (N.D.Ill.1990)).

In a thorough and persuasive discussion of the issues, the Supreme Court of Florida took the analysis one step further and held that an ocean carrier issuing a through bill of lading would not be liable under the Carmack Amendment even if a separate domestic bill of lading was issued for inland carriage. *King Ocean Central America*, 717 So.2d at 509–14. The reason is that the ocean carrier's statutory liability ends with the geographic limits of the

applicable statutes, COGSA and the Harter Act. *See id.; see also Mannesman Demag Corp.*, 225 F.3d at 593–94 (discussing the Harter Act) (citing *Jagenberg, Inc. v. Georgia Ports Auth.*, 882 F.Supp. 1065, 1076–79 (S.D.Ga.1995)). By contrast, the Carmack Amendment governs domestic inland transportation under a domestic bill of lading. *Capitol Converting Equip., Inc.*, 965 F.2d at 393–95. The Carmack Amendment does not extend seaward to impose liability on an ocean carrier for losses that occur during inland transit. *King Ocean Central America*, 717 So.2d at 512; *compare Mannesman Demag Corp.*, 225 F.3d at 593–94 (refusing to extend the Harter Act to govern inland transportation). All of this is not to say that an ocean carrier cannot be liable for inland transit losses. It is to say that an ocean carrier's liability for inland transportation of imported cargo is a creature of contract, not statute. *See King Ocean Central America*, 717 So.2d at 512–14; *see also Capitol Converting Equip., Inc.*, 965 F.2d at 393–97 (deciding the issues under Illinois contract law); *but see Kyodo U.S.A., Inc. v. Cosco N. Am., Inc.*, No. 01–CV–499, 2001 WL 1835158, at *4–6 (C.D.Cal. July 23, 2001) (disagreeing with *King Ocean Central America*).

■ Here, the transit documents demonstrate that Hanjin issued a foreign through bill of lading. The question of whether a bill of lading is a through bill of lading is largely a question of fact. *Capitol Converting Equip., Inc.*, 965 F.2d at 394. Both the waybill and bill of lading were issued in Hong Kong, and both documents show that Hanjin received the cargo in Shenzhen, China. The face of the waybill indicates that the cargo was to be carried aboard the Hanjin PORTLAND, discharged from the vessel at Long Beach, California, and delivered to North Vernon, Indiana. The waybill specifically indicates that the place of delivery was North Vernon, Indiana. The waybill also indicates that a named place of delivery was to be designated only when the waybill was for multimodal or through transportation. On these facts, the court finds that Hanjin's waybill and bill of lading were intended by the parties to be a through bill of lading governing the entire transportation from China to Indiana. There were no other bills of lading, domestic or foreign, issued for the transit. The relationship between Lowe's and Hanjin is a contractual agreement that does not fall under the Carmack Amendment. As a result, the Carmack Amendment does not apply to Hanjin.

### 2. Federal Common Law:

Indemnity presents an alternative argument that its claims against Hanjin are governed by federal common law. If that is correct, then the court would have jurisdiction under 28 U.S.C. § 1331. *See e.g. Frank v. Bear Stearns & Co.*, 128 F.3d 919, 923–25 (5th Cir.1997); *Northrop Corp. v. AIL Systems, Inc.*, 959 F.2d 1424, 1426–27 (7th Cir.1992). This is because § 1331's "arising under" federal law language encompasses both statutory and common law. *See Turner/Ozanne*, 111 F.3d at 1317 (citing *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972)). Indemnity argues that federal common law fills in any statutory gaps of the Carmack Amendment and permits it to recover against Hanjin. In essence, Indemnity asks the court to grant it relief under federal law despite the absence of a statutory claim against Hanjin. As discussed below, the court declines to exercise its judicial authority to craft a federal claim to cover Indemnity's loss.

After *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal courts must proceed cautiously when venturing into the realm of federal

common law. *See e.g. Northwest Airlines v. Transport Workers Union,* 451 U.S. 77, 95–97, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981); *Frank,* 128 F.3d at 923–25. When a federal court creates federal common law, it must runs the risk of violating the fundamental doctrines of separation of powers and federalism. *See Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1250 (6th Cir.1996).

■ Relying on Supreme Court precedent, the Seventh Circuit permits federal common law claims for relief in limited circumstances: (1) where Congress has granted federal courts the authority to develop substantive law; or (2) where a federal rule of decision is necessary to protect uniquely federal interests. *See Northrop Corp.,* 959 F.2d at 1426–27 (quoting *Texas Ind., Inc. v. Radcliff Mat'ls, Inc.,* 451 U.S. 630, 640, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981)); *see also Frank* 128 F.3d at 922–25 (employing similar analysis). Congress has not made a specific grant of authority to the courts to develop substantive law on interstate carriage of goods. *See e.g. Cleveland v. Beltman North American Co., Inc.,* 30 F.3d 373, 377–79 (2nd Cir.1994) (finding that there was no federal common law right to punitive damages under the Carmack Amendment). Therefore, the court must determine if there is a "unique federal interest" that justifies fashioning a judicial claim for relief.

A unique federal interest is present " 'where there is an overriding federal interest in the need for a uniform rule of decisions or where the controversy touches basic interests of federalism....' " *Northrop Corp.,* 959 F.2d at 1426 (quoting *Illinois v. City of Milwaukee,* 406 U.S. 91, 105–06 n. 6, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972)). This occurs only in narrow areas, " 'such as those concerned with the rights and obligations of the United States, [or] interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations....' " *Northrop Corp.,* 959 F.2d at 1426 (quoting *Texas Indus.,* 451 U.S. at 641, 101 S.Ct. 2061).[4]

■ Standing alone, however, the existence of a unique federal interest is insufficient for finding a federal common law claim for relief. *See Northrop Corp.,* 959 F.2d at 1426–27. In addition, federal law must displace state law. *Id.* Such displacement happens only when there is a significant conflict between identifiable federal interests or policies and the operation of state law, or the application of state law would frustrate specific objectives of federal legislation. *Id.* (quoting *Boyle v. United Technologies Corp.,* 487 U.S. 500, 507, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988)). Thus, in order for Indemnity to have a federal common law claim against Hanjin, there must be: (1) a uniquely federal interest; and (2) displacement of state law by federal law.

■ There is no uniquely federal interest in this case. The dispute is between private parties concerning their contract of carriage. The dispute does not concern the rights and liabilities of the United States, one of the individual States, or United States foreign affairs. Instead, the dispute is purely private. Generally speaking, such private disputes do not come within the scope of federal common law. *See Turner/Ozanne,* 111 F.3d at 1317–18 (citing *American Invs–Co. Countryside, Inc. v. Riverdale Bank,* 596 F.2d 211, 218–19 (7th Cir.1979)); *cf. United*

States v. Little Lake Misere Land Co., Inc., 412 U.S. 580, 593–94, 93 S.Ct. 2389, 37 L.Ed.2d 187 (1973) (noting that in the absence of an applicable Act of Congress where the United States is a party, it is for federal courts to fashion the governing rule of law). This lack of a uniquely federal interest is fatal to Indemnity's assertion of federal common law. See Turner/Ozanne, 111 F.3d at 1317–18; Northrop Corp., 959 F.2d at 1426.

Nevertheless, the court continues with the analysis because of the different outcomes reached by other courts in interstate commerce cases. The displacement of state law by federal law is an issue that is not easily answered. Undoubtedly, Congress has expressed its intent to have uniform federal laws governing the interstate transportation of goods, to the exclusion of inconsistent state law. See Hughes v. United Van Lines, 829 F.2d 1407, 1412–15 (7th Cir.1987); Musson Theatrical, 89 F.3d at 1259–50; Sam L. Majors Jewelers v. ABX Inc., 117 F.3d 922, 927 (5th Cir. 1997); Cleveland, 30 F.3d at 377. The question is whether this expressed legislative intent has displaced state law to the extent that federal judges must take the extraordinary step of creating law.

Some cases easily find that federal common law will fill in "statutory gaps" in carriage of goods cases. See e.g. Nippon Fire & Marine v. Skyway Freight Systems, 235 F.3d 53, 59 (2nd Cir.2000) (finding that federal common law existed for air cargo claims);[5] Ingram Micro, Inc. v. Air-oute Cargo Exp., Inc., 154 F.Supp.2d 834, 838–839 (S.D.N.Y.2001) (finding that federal common law governed ground transportation for goods originating in Canada); Tokio Marine & Fire Ins. Co. v. Kaisha, 25 F.Supp.2d 1071, 1081–82 (C.D.Cal.1997) (finding that federal common law mandated a negligence standard for an ocean carrier to obtain indemnity from a rail carrier).

Other cases have not found federal common law claims, or have done so only after thorough review of the applicable federal statutory and regulatory schemes, together with careful limitations on judicial lawmaking. See e.g. Sam L. Majors Jewelers, 117 F.3d at 926–30 (finding a federal common law remedy in an air cargo case); Musson Theatrical, 89 F.3d at 1249–57 (holding that there was no federal common law for fraud against an air carrier); Cleveland, 30 F.3d at 377–81 (holding that if federal common law for punitive damages existed, it was pre-empted by the Carmack Amendment); Roberts Distributor, Inc. v. Federal Express Corp., 917 F.Supp. 630, 633–40 (S.D.Ind.1996) (finding no federal common law remedy in an air cargo case); Quasar Co. v. Atchison, Topeka and Santa Fe Ry. Co., 632 F.Supp. 1106, 1112–13 (N.D.Ill.1986) (holding that federal common law, drawn from the applicable statutory and regulatory schemes, will apply to cases that fall outside of the literal coverage of the Carmack Amendment).

---

5. Several of the cases cited herein address federal common law in the context of air cargo. See Nippon Fire & Marine, 235 F.3d at 59; Sam L. Majors Jewelers, 117 F.3d at 926–30; Musson Theatrical, Inc., 89 F.3d at 1249–57; Roberts Distributor, Inc. v. Federal Express Corp., 917 F.Supp. 630, 633–40 (S.D.Ind.1996). Air cargo cases "are a different animal" because the statutory scheme does not provide for a private right of action. Mudd–Lyman Sales and Serv. Corp. v. United Parcel Serv., No. 00 C 5648, 2002 WL 908310, at *3 (May 6, 2002). Some of these cases have found that federal common law provides for a private right of action, while others have not. (See text infra.) The air cargo cases are not precisely on point because the case at bar involves sea and ground transportation where the federal statutes recognize private claims for relief. Nevertheless, the analysis in these opinions is instructive.

Still other cases have not ventured into federal common law. Instead the courts analyzed the issues in terms of express jurisdictional grants, such as diversity of citizenship, federal statutes, or admiralty. *See e.g. Hartford Fire*, 230 F.3d at 554–55; *Capitol Converting, Equip., Inc.*, 965 F.2d at 392–93; *Whaling v. Atlas Van Lines, Inc.*, 919 F.Supp. 168, 170 (E.D.Pa.1996); *New York Marine & Gen. Ins. Co. v. S/S "MING PROSPERITY,"* 920 F.Supp. 416, 421 (S.D.N.Y.1996); *Marine Office of America Corp. v. NYK Lines*, 638 F.Supp. 393, 398 (N.D.Ill.1985).

As Indemnity implies, the Carmack Amendment is the closest federal statute to covering Indemnity's loss, as it governs inland ground transit. The Carmack Amendment has two primary goals, the first of which is " 'to relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods.' " *Pizzo v. Bekin Van Lines*, 258 F.3d 629, 634 (7th Cir.2001) (quoting *Reider v. Thompson*, 339 U.S. 113, 119, 70 S.Ct. 499, 94 L.Ed. 698 (1950)). The Carmack Amendment's second goal is to provide uniform standards of liability for carriers. *See Gordon v. United Van Lines*, 130 F.3d 282, 286 (7th Cir.1997); *Hughes*, 829 F.2d at 1412–15. In promoting these twin goals, federal courts have held that the Carmack Amendment generally pre-empts both state and federal common law claims that would otherwise fall within its parameters. *See Gordon*, 130 F.3d at 286; *Hughes*, 829 F.2d at 1412–15; *Cleveland*, 30 F.3d at 377–81. At the same time, the Carmack Amendment does not pre-empt all common law claims for injuries that are different in kind from cargo damage. *See e.g. Gordon*, 130 F.3d at 287–89 (permitting a state common law claim for intentional infliction of emotional distress arising out of the interstate movement of household goods).

Neither goal of the Carmack Amendment requires the court to create a federal common law remedy against an ocean carrier for cargo damage occurring during inland carriage under a through bill of lading. First, a shipper's remedies will not be diminished. The through bill of lading/contract creates the claim against the ocean carrier. The shipper will be able to proceed against the party it contracted with, and will not be forced to go through the laborious process of discovering the carrier that is actually at fault for the loss. *Compare e.g. Pizzo*, 258 F.3d at 634.

Second, uniformity may be an issue whether the claim is decided under state or federal common law. The court recognizes that applying state law to interstate carriage cases may lead to some non-uniformity. But, creating a federal common law remedy will not necessarily ensure uniformity. Writing for the Illinois Supreme Court, Justice Stephen Douglass eloquently wrote about the development of common law:

> "The common law is a beautiful system; containing the wisdom and experience of ages. Like the people it ruled and protected, it was simple and crude in its infancy, and became enlarged, improved, and polished, as the nation advanced in civilization, virtue, and intelligence. Adapting itself to the condition and circumstances of the people, and relying upon them for its administration, it necessarily improved as the condition of the people was elevated."

*Penny v. Little*, 4 Ill. 301, 304 (Ill.1841). By its very nature, common law whether state or federal, develops over time through judicial analysis and interpretation. There is no guarantee that different federal judges will agree as to what federal common law should be. *See e.g. Cleve-*

*land,* 30 F.3d at 379 (noting that creating a federal common law claim for punitive damages under the Carmack Amendment would frustrate the uniformity goal).

The better course of action is to resist the invitation to create a federal common law remedy against an ocean carrier for cargo damage that occurs during substantial inland transit. An important factor is that the court must recognize the claim for relief in the absence of action from Congress. As the Sixth Circuit stated, that proposition calls for considerably more judicial restraint than when a court is faced with deciding an issue that is generally within statutory coverage but not directly addressed by Congress. *See Musson Theatrical, Inc.,* 89 F.3d at 1249 n. 3 (dicta noting that where the dispute is between private parties, there must be an extraordinary federal interest present to warrant creating a federal common law claim for relief); *compare Quasar Co.,* 632 F.Supp. at 1112–13 (discussing the effect of railroad deregulation on an issue that was otherwise within the scope of the Carmack Amendment).

Congress has the constitutional authority to legislate an appropriate scheme to address the liability of an ocean carrier under foreign through bills of lading. *See e.g. Cleveland,* 30 F.3d at 377–81 (noting that it is for Congress and not the judiciary to determine the damages that are recoverable under the Carmack Amendment); *Musson Theatrical, Inc.,* 89 F.3d at 1250 ("it is not the role of federal courts to articulate federal interests...."). Shippers are presently not without recourse, because state courts and state laws are perfectly capable of providing relief. *See e.g. Capitol Converting, Equip., Inc.,* 965 F.2d at 392–93 (applying Illinois law); *New York Marine & Gen. Ins. Co.,* 920 F.Supp. at 421 & 425–26 (applying New York law); *King Ocean Central America,*

717 So.2d at 509–14. The court recognizes that applying state law to through bills of lading may lead to some inconsistency or non-uniformity that runs against the expressed intent of Congress. If so, Congress and not the court should legislate change. The specter of limited non-uniformity is not enough for the court to create federal common law. The best method of assuring uniformity of federal law is through Congressional, not judicial, action.

In the final analysis, the effect of state law on this case is more academic than practical. The law concerning the duties of originating carriers under through bills of lading is well established. *See King Ocean Central America,* 717 So.2d at 509–14 (discussing the legal history of through bills of lading); *Atalanta Corp. v. Polskie Linie Oceaniczne,* 683 F.Supp. 347, 351 n. 12 (S.D.N.Y.1988) (collecting cases holding that the issuer of a through bill of lading is responsible for its complete performance). The carrier's duty is to make delivery to the final agreed to destination. The extended discussion herein is only to make clear that the court is not proceeding under federal common law.

### 3. COGSA:

COGSA by its terms is in effect only during the period of time that goods are aboard a ship, which is to say after loading and prior to discharge. 46 U.S.C.App. § 1301(e); *see Hartford Fire,* 230 F.3d at 557 (discussing COGSA's *ex proprio vigore* application). The scope of this coverage is often described with the illustrative term "tackle to tackle." *See* 2 Schoenbaum, *Admiralty and Maritime Law Practitioner Treatise Series,* § 10–16 (3rd ed.2001). In this case, the loss occurred well after the cargo was discharged from the vessel. Therefore, COGSA by its terms does not apply.

■ Nevertheless, Hanjin asserts that COGSA governs the case because a clause paramount in the bill of lading incorporates the substantive provisions of COGSA as the parties' choice of law. Hanjin makes a related argument that COGSA is the sole basis for jurisdiction over Hanjin. Hanjin's jurisdictional argument is incorrect for two reasons. First, the parties' contractual choice of law, which is what the incorporation of COGSA is, *see Hartford,* 230 F.3d at 549, cannot confer subject matter jurisdiction upon the court. Federal courts are courts of limited subject matter jurisdiction. "Fundamental to our law is the understanding that 'federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.'" *Transit Exp., Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir.2001) (quoting *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)). A contractual adoption of federal law where it does not otherwise apply does not create federal subject matter jurisdiction. *Myers v. County of Lake, Ind.,* 30 F.3d 847, 848–50 (7th Cir. 1994) ("Litigants cannot stipulate to federal jurisdiction."). Thus, the parties' agreement to have their contract of carriage governed by COGSA is inapposite to the jurisdictional analysis. *See Whaling v. Atlas Van Lines, Inc.,* 919 F.Supp. 168, 170 (E.D.Pa.1996).

Second, the rule of substantiality governs the court's jurisdictional analysis. If the well pled complaint invokes the court's jurisdiction, then jurisdiction remains even if the federal claim is meritless. *Turner/Ozanne,* 111 F.3d at 1316–18; *LaSalle Nat'l Trust,* 76 F.3d at 143–44; Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d,* § 3564. Hanjin's argument misses the fact that the complaint presented substantial claims under both COGSA and the Carmack Amendment. Hanjin's argument goes to the merits of the COGSA claim rather than the court's jurisdiction.

■ Hanjin's clause paramount/contractual extension of COGSA is not unusual in the transportation industry. *See e.g. Hartford Fire,* 230 F.3d at 557; *Gerling–Konzern v. Expeditors Int'l Ocean,* No. 99 C 8348, 2000 WL 781434, at * 3 (N.D.Ill. June 15, 2000); 1 Sorkin *Goods in Transit* § 1.04[4]; Schoenbaum *supra* §§ 10–8.3 & 10–15. The court can assume without deciding that the parties have made an effective adoption of COGSA through Hanjin's clause paramount. As discussed below, contrary to Hanjin's argument, COGSA does not relieve Hanjin of liability for the loss.

### 4. State Law:

The parties' briefs do not contemplate the application of state law. But, as explained above, there is no federal law that governs by its own terms. The case at its core is a breach of contract case, and its resolution depends on an application of state law contract principles. *See Capitol Converting, Equip., Inc.,* 965 F.2d at 392–93 (finding that Illinois contract law controlled the carrier's liability); *New York Marine & Gen. Ins. Co.,* 920 F.Supp. at 421 & 425–26 (applying New York law); *compare* 1 Sorkin *Goods in Transit,* § 1.23 (2002) (federal law should control all interstate carriage). Under the circumstances of this case, Indemnity's failure to plead a state law claim against Hanjin does not foreclose relief. The facts demonstrating that Indemnity is entitled to relief under state law were presented at trial, and subject to testing by Hanjin. Hanjin's defense is based on the technical definition of "delivery" under COGSA, and the actions of the Customs Broker—Fritz Companies.

The court's application of state law does not prejudice Hanjin.

Ordinarily, a federal court applies the choice of law rules of its forum state. *See Gramercy Mills, Inc. v. Wolens*, 63 F.3d 569, 572 (7th Cir.1995) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)); *but see ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 707 (7th Cir.1995) (noting that the court should apply the forum state's law in the absence of any argument to the contrary). Illinois follows the principles set forth in the Restatement of Conflicts of Laws, which applies the law of the state with the most significant relationship to the transaction and the parties. *See Gramercy Mills*, 63 F.3d at 572. Determining factors are the parties' choice of law, the places of contracting and negotiation, the place of performance, the location of the subject matter of the contract, and the location of the parties. *See id.* Neither Indemnity nor Hanjin develops or analyzes these factors. The only facts the court are sure of is that delivery is a significant part of the performance of the contract, and that delivery was to occur in Indiana. *Compare New York Marine & Gen. Ins. Co.*, 920 F.Supp. at 421 n. 5 (holding that New York applied to a foreign through bill of lading because delivery was to be in New York). Thus, the court could apply Indiana law, or in the absence of any argument by the parties, apply Illinois law by default. In any event, the outcome is the same.

Contracts are to be interpreted as a whole. *See e.g. LaSalle Nat'l Trust*, 76 F.3d at 144 (discussing Illinois contract law); *Premier Title Co. v. Donahue*, 328 Ill.App.3d 161, 262 Ill.Dec. 376, 765 N.E.2d 513, 516 (2002) (same); *Eskew v. Cornett*, 744 N.E.2d 954, 957 (Ind.Ct.App.2001) (discussing Indiana contract law). The parties' choice to have COGSA govern the carriage is a contractual term, and is subject to modification by other terms incorporated into the contract. *See LaSalle Nat'l Trust*, 76 F.3d at 144; *Premier Title Co.*, 262 Ill.Dec. 376, 765 N.E.2d at 516; *Eskew*, 744 N.E.2d at 957; *King Ocean Central America*, 717 So.2d at 509–14; *see also New York Marine & Gen. Ins. Co.*, 920 F.Supp. at 421 (noting that where the parties agree to apply COGSA, the statute can apply only to the extent that it does not conflict with state law); *cf. Atalanta Corp.*, 683 F.Supp. at 351 n. 12 (1988) (discussing well settled federal law that the issuer of a through bill of lading is responsible for its complete performance). Hanjin's delivery to North Vernon, Indiana is a material term of the parties' agreement. That delivery did not occur, and Hanjin is liable under the through bill of lading for failing to deliver the goods to the agreed upon destination.

Hanjin relies on technical aspects of COGSA to argue that its delivery to Channel Distribution/O'Hare Services was effective delivery under COGSA. According to Hanjin, delivery occurred when the container arrived at the Channel Distribution/O'Hare Services facility for the Customs examination. Because the theft occurred after that time, Hanjin claims that it is not liable. The evidence does not support Hanjin's position. There is no evidence that Lowe's relieved Hanjin of the obligation to make final delivery to Lowe's facility. Similarly, there is no evidence that Lowe's agreed that the intermediate stop for the Customs examination extinguished Hanjin's contractual liability to ensure that the cargo was delivered to North Vernon, Indiana. The court finds that Hanjin remained obligated under the terms of the waybill and bill of lading to deliver the cargo to North Vernon, Indiana after the Customs examination was completed.

Whatever merit Hanjin's argument may have under an *ex proprio vigore* application of COGSA, it is inapposite where COGSA applies only through the parties' contractual agreement. *See King Ocean Central America, S.A.*, 717 So.2d at 509–14; *New York Marine & Gen. Ins. Co.*, 920 F.Supp. at 421. Hanjin agreed to carry the cargo North Vernon, Indiana, which did not happen. Hanjin cannot avoid its contractual duty to deliver the cargo to the agreed destination by relying on a technical aspect of COGSA where the statute does not apply by its own force.

### III. CONCLUSION

For the foregoing reasons, judgment is entered in favor of Plaintiff against Hanjin Shipping Company in the amount of $236,032.71.

IT IS SO ORDERED.